JOHN M'NAMARA, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 16, 1908.

1. **STREET RAILWAYS: Crossing: Negligence: Contributory Negligence: Physical Facts: Humanitarian Doctrine.** The conduct of a traveler crossing the tracks in front of a street car is held under the physical facts of the case to have been negligence, but there was evidence sufficient to send the case to the jury on the humanitarian doctrine of the defendant's negligence after he might have discovered the traveler's peril, since the running of a street car without a close lookout in a public

street of a populous urban section is at variance with the dictates of ordinary humanity and partakes of the nature of wantonness and so eliminates contributory negligence as a factor in the resulting injury.

2. **DAMAGES: Verdict: Excessive: Prejudice: Minimizing.** A verdict for a personal injury is held not so excessive as to indicate passion or prejudice on the part of the city; and the rule of minimizing the damages cannot be held to require the injured person to choose between suffering from the results of the injury all his life or take the risk of the outcome of a serious surgical operation.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback,* Judge.

AFFIRMED.

*John H. Lucas, F. G. Johnson* and *C. S. Palmer* for appellant.

(1) Where the testimony is such that it falsifies well known laws of nature, the court should give a peremptory instruction. Weltmer v. Bishop, 171 Mo. 110. (2) The damages were excessive. Doherty v. Kansas City, 105 Mo. App. 173; Stoetzele v. Swearingen, 90 Mo. App. 588; Haynes v. Trenton, 108 Mo. 123. (3) In connection with the claim of excessive damages the instruction given by the court on the question of damages was erroneous. Smedley v. Railroad, 118 Mo. App. 103.

*Boyle, Guthrie, Howell & Smith* for respondent.

(1) The doctrine of physical fact is a dangerous one for the defendant to invoke in this case, for in any view of the case the gripman is convicted of negligence by the physical facts. (2) So far as the injuries in this case are concerned the verdict was not by any means an excessive one. Rosier v. Railroad, 125 Mo. App. 159, 191 Mo. 370; 70 Tex. 73, 8 S. W. 66; 1 Joyce, Dam., sec. 196; Watson, Dam., Pers. Inj., sec. 183, 191, 192; 44 N. Y. App. Div. 163; 60 N. Y. Supp. 732; 68 Pa. St. 168. (3) The criticism of plaintiff's instruction on the measure of damages is not well taken.

JOHNSON, J.—Plaintiff received personal injuries in a collision between a wagon in which he was riding on a public street in Kansas City and a cable train operated by defendant, a street railway company, on its Twelfth street line in that city. He sued to recover damages sustained alleging that his injuries were caused by the negligence of defendant in failing "to stop its train when it saw, or by the exercise of due care should have seen plaintiff in a position of peril in time to have stopped its train and prevented said collision by the exercise of due care." The answer contains a general denial and an allegation "that if plaintiff received any injuries at the time mentioned in the petition, the same were caused by plaintiff's own fault and negligence." The trial resulted in a judgment for plaintiff in the sum of two thousand dollars, and the cause is here on the appeal of defendant.

The first questions to receive our attention are those arising from the contention of defendant that the jury should have been instructed peremptorily to return a verdict in its favor. The injury occurred at about two o'clock p. m. June 9, 1902, on Twelfth street in the middle of the block between Troost avenue and Harrison street. The course of Twelfth street is east and west, that of the other mentioned streets north and south. Defendant's railway line on Twelfth street consisted of two tracks laid in the middle of the street, the north track being used for west-bound trains, the other for trains going east. The train that collided with plaintiff's wagon was west-bound and consisted of a gripcar and trailer, the entire train being about forty-three feet in length. Plaintiff then eighteen years old, was driving a one-horse covered delivery wagon for a grocer whose place of business was on the north side of Twelfth street and west of an alley which ran north and south through the middle of the block between Harrison street and Troost avenue. He drove onto Twelfth

street from the alley with the intention of making a turn that would bring the wagon in front of the store with the horse headed to the east. The distance from the property line on the north side of the street to the curb was 11½ feet and from the curb to defendant's first track, 10 1-6 feet. To make the contemplated turn, it was necessary for plaintiff to drive southward from the mouth of the alley onto and, perhaps, across the track. The length of the horse and wagon was seventeen feet. Plaintiff sat in the seat in the front end of the wagon and when he reached the property line had nothing to obstruct his view of Twelfth street in either direction, except the wagon cover which, however, did not prevent his seeing as far to the east as Troost avenue. The distance between the east line of the alley and the west line of Troost avenue was 143¼ feet. Plaintiff testified that he drove out of the alley in a walk and that when he reached the property line he looked to the east and west, saw the cable train standing still at the west side of Troost avenue and, deeming that he had ample time in which to make his turn, drove onto the track. The horse and the front end of the wagon cleared the crossing, but the gripcar ran into the rear end of the wagon and plaintiff was injured. Plaintiff's employer, an eye-witness, testified: "I was looking out of the window, that the car should not come down the hill while he was coming out, and he came out when the car was standing still at Troost avenue, and I suppose he saw me watching him. And he came slowly out of the alley and the car wasn't in motion, it was standing still on the corner, and he came across and when he was pretty near across the first track and on the second track, the car was coming down there full speed . . . the gripman was adjusting the grip and not standing up and looking, and the car was coming down full speed, and just a few feet before it hit the wagon the passengers began to hollow and the grip-

man looked up, but it was too late and the car struck the wagon and turned it around." . . . Q. Did the car drag him (plaintiff)? A. No, sir, he was laying against the car, just the same as dragging him, only he laid about twenty-five feet further down than where he fell. . . . Q. When the car stopped, where was; he lying with reference to the train? A. He was lying by the rear coach, it had passed a little bit. Q. Where was the gripman at this time? A. Lying down adjusting the grip as he was going down the hill full speed. He wasn't standing up at all and before he struck the wagon, the passengers commenced to hollow, but he could not get up in time."

A woman passenger introduced as a witness by plaintiff corroborated the testimony of the grocer. She said that when the train left Troost avenue, the gripman stooped over to adjust something and in that position could not see the track ahead. He did not look up until warned by her screams. He then did everything in his power to stop, but the effort came too late. Other facts adduced by plaintiff are that the train ran by gravity down a rather steep hill, that before the collision, it attained a speed of from nine to twelve miles per hour; that it could have been stopped in from thirty-five to forty feet, that it ran twenty-five feet after colliding with the wagon, and that the bell was not rung.

The evidence of defendant is to the effect that the gripman was looking ahead and was ringing the bell; that the train was running at six or seven miles per hour, that when he first saw plaintiff emerge from the alley, the gripman supposed that he would not drive onto the track but would turn down the street, but that suddenly and unexpectedly he "pulled the horse right in front of the car across the track and gave him two licks with the whip attempting to get across." The gripman admits that just after starting from Troost avenue, he found it necessary to turn an adjusting

screw, but denies that in doing this he stooped over or withdrew his attention from the track.

The negligence of plaintiff in heedlessly and unnecessarily driving from a place of safety into one of danger is apparent under any reasonable conclusion afforded by the facts before us. In admitting that the only time he looked eastward was just as he emerged from the alley, he confesses his negligence. Knowing as he must have known that the train was in striking distance, his failure to look again before he entered the zone of danger was wholly inexcusable. We reject as unworthy of belief the statement that when he looked the train was stationary at the west side of Troost avenue. Facts and circumstances about which there is and can be no dispute show that the train must have traversed half the distance between its stationary position at Troost avenue and the place of collision at the moment when plaintiff says he looked and saw that it had not started. Necessarily in running by gravity alone it started slowly and gradually increased its speed to twelve miles per hour, the limit fixed by plaintiff's evidence. It could not have traveled one hundred feet while plaintiff's horse, going at from four to five miles per hour was traveling approximately twenty-five feet. Courts pay no attention to the testimony of witnesses which is clearly irreconcilable with plain physcal law and fact. Plaintiff did not look at all, or, looking, negligently went on. In either case, his perilous situation was the product of his own wrong. Such, evidently, was the view entertained by the trial judge, since we find submitted in the instructions to the jury no other issue of negligence than that involved in a breach of the duty defendant owed plaintiff under the principles of the humanitarian doctrine.

We think the court rightly held the evidence of plaintiff sufficient to take that issue to the jury as one of fact. The question raised for the jury to solve

was this: Conceding that plaintiff became imperiled by his own fault, did the gripman exercise reasonable care, first, to discover the peril, and, second, to avoid the injury by stopping the train and by giving warning signals? Plaintiff's witnesses say—and the evidence is substantial—that the gripman, while his train was coasting downhill, diverted his attention from the track ahead to adjust a mechanism connected with the grip. Considering the fact that he was operating dangerous machinery along a public street in a populous and busy part of a large city, such conduct was negligence of a pronounced character. He should have anticipated that vehicles were likely to come out of the alley into the street and should have been on the lookout for them. Such negligence cannot be regarded as being restricted in its scope to the production of the perilous position of the person endangered and, consequently, as being cancelled by contributory negligence. It constituted a distinct breach of the humanitarian duty defendant owed to plaintiff and created a liability on the part of the defendant which remains unaffected by the fact that plaintiff, himself, was negligent. To run such a powerful and dangerous instrumentality as a cable train on a public street of a city in a populous section, without keeping a close lookout, is so at variance with the dictates of ordinary humanity that it partakes of the nature of wantonness, and when injury follows "engrosses the entire field of culpability and eliminates contributory negligence as a factor in the production of the injury." [Cole v. Railway, 121 Mo. App. 612, recently approved by the Supreme Court in Everett v. Railway, 214 Mo. 54, 112 S. W. 497.] Had the gripman been looking ahead, it is fair to conclude, from all the facts and circumstances that he would have discovered the peril of plaintiff, at least as soon as it became apparent to the passengers, and that he either could have stopped the

train or reduced its speed sufficiently for the wagon to clear the crossing.

We do not agree with the defendant that the damages are so excessive as to indicate that the verdict was the result of passion or prejudice. One of plaintiff's ears was so badly cut that seven stitches were required to bring the parts together properly. He was cut and bruised about the shoulders and body and was laid up for a month by his injuries. A severe case of varicocele then developed which the evidence shows was a direct result of the injury. Unless he submits to a surgical operation, plaintiff never will recover from this affliction. The expert witnesses say that by cutting out the enlarged veins, in all likelihood a permanent cure may be effected, but add that the operation requires the use of an anaesthetic and, therefore, is more or less dangerous. We do not think plaintiff should be criticised and punished on account of his failure to undergo a surgical operation. He should be accorded the right to choose between suffering from the disease all his life, or taking the risk of an unsuccessful outcome of a serious surgical operation. Certainly, defendant, whose negligence produced the unfortunate condition, is in no position to compel plaintiff again to risk his life in order that the damages may be lessened. To give heed to such contention would be to carry to an absurd extreme the rule which requires a person damaged by the wrong of another to do all that reasonably may be done to minimize his damages.

The judgment is affirmed. All concur.