### INDIAN TERRITORY ILLUMINATING OIL CO. v. BATES et al.

No. 22148.    Opinion Filed July 28, 1931.

Clayton B. Pierce and A. J. Follens, for petitioner.

Cooke & McBride and Arthur Leach, for respondent A. E. Bates.

J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for State Industrial Commission.

McNEILL, J.    This matter comes to this court upon petition of Indian Territory Illuminating Oil Company, petitioner, to review an award made by the State Industrial Commission on the 9th day of February, 1931, which award, in part, is, as follows:

"That on January 31, 1930, claimant, A. E. Bates, was in employment of respondent, I. T. I. O., and engaged in a hazardous occupation covered by and subject to provisions of the Workmen's Compensation Law; that in the course of, and arising out of his employment, said claimant, on January 31, 1930, sustained an accidental personal injury, the nature of said injury being a fractured coccyx.

"That claimant worked at light work for respondent until August 7, 1930, when he was forced to resign on account of injury. * * *

"That the respondent tendered operation to claimant in order to repair fractured coccyx, but that claimant refused such tender on the grounds he had been advised by physicians not to have said operation performed.

"That, as a result of said accidental injury, claimant's wage-earning capacity thereafter, in the same employment, or otherwise, has decreased 50 per centum, by reason of his permanent partial disability.

"That by reason of claimant's permanent partial disability, as aforesaid, claimant is entitled to 66⅔ per centum of the difference between his average weekly wages at the time of the accidental injury and his wage-earning capacity thereafter, in the sum of $12 per week, payable during the continuance of such permanent partial disability not to exceed 300 weeks.

"The Commission is of the opinion:  On consideration of the foregoing facts, that claimant is entitled to compensation at the rate of $12 per week, for a period not to exceed 300 weeks, from the 7th day of August, 1930, less the five-day waiting period, subject to reconsideration of the degree of such impairment by the Commission on its own motion, or upon application of any party in interest; and that there is now due claimant a total of 25 weeks and 4 days' compensation, computed from the 7th day of August, 1930, less the five-day waiting period to February 7, 1931, in the total sum of $308, and to continue compensation thereafter.

"It is therefore, ordered:    That within 15 days from this date, the respondent, I. T. I. O., pay the claimant, A. E. Bates, the sum of $308, being 25 weeks and 4 days compensation, computed from the 7th day of August, 1930, less the five-day waiting period, to February 7, 1931, and to continue compensation thereafter at the rate of $12 per week, until the period of 300 weeks has been paid or until otherwise ordered by the Commission; also pay all medical expenses

incurred by the claimant as result of said injury. * * *"

The petitioner contends that the State Industrial Commission committed error in directing petitioner to pay compensation in view of the evidence in this case showing that the disability of the employee was the direct result of his failure to submit himself to medical and surgical treatment which was tendered to him by the petitioner; that respondent cannot refuse an operation that all the medical testimony recommends should be performed; that the operation is not dangerous and would restore, in a short time, respondent's ability to perform manual labor; and that petitioner cannot be required to continue paying compensation indefinitely.

In this case, the respondent testified in reference to his injury as follows:

."A. We was cementing a well; I was carrying some hose; we had stacked some timbers for the well work; it was piled up on the rig floor; I was on the end of those hose; going into the rig, in starting over this timber, I had on my overshoes, it was icy; I slipped and went down astraddle of this piece of 12x14, it broke me back in here. * * * I tried to get up, but I couldn't."

Respondent, after receiving the injury, returned to his work in a few days, and continued in the employment of the company doing light work, with the approval of the company foreman, until August 7, 1930, at which time, being unable by reason of his injury to continue to do the work assigned to him, he resigned and purchased a small fruit stand, which business venture proved a failure. His claim was filed with the Commission on August 27, 1930, and a final hearing was had thereon, February 8, 1931. The Commission found that claimant, while engaged in a hazardous occupation and in the employment of the petitioner, sustained an accidental personal injury, arising out of and in the course of his employment, resulting in a permanent partial disability. The nature of such injury was a fractured coccyx, the coccyx being the last four bones of the spine.

It appears that petitioner contends most strongly on the failure of the respondent to submit himself to a surgical operation tendered him by the company. The record shows that petitioner did not at any time tender respondent an operation until the day of said final hearing.

It is not disputed that respondent sustained the injury described herein, arising out of and in the course of his employment, and that said employment comes within the provisions of the Workmen's Compensation Law. In this case, for petitioners to avoid this statutory liability, it is incumbent upon petitioner to prove by competent evidence that respondent has forfeited his right to compensation by unreasonably refusing to submit himself to a surgical operation under the tender made to him by the petitioner at the hearing, on February 9, 1931.

The petitioner contends that the rule laid down by Lord McLaren in Donley v. Baird, I B. W. C. C. (Scotland 99), is the test applied by all authorities in deciding whether the injured employee has the right to refuse an operation. That rule was cited by this court, speaking through Mr. Justice Kennamer, in the case of Henley v. Oklahoma Union Railway Co., 81 Okla. 224, 197 Pac. 488, and is as follows:

"If the operation is not attended with danger to life and health, or extraordinary suffering, and if, according to the best medical or surgical opinion the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, then he must either submit to the operation or release his employer from the obligation to maintain him."

In that case this court was quoting from the case of McNally v. Hudson & Manhattan Ry. Co., 87 N. J. L. 455, 95 Atl. 122, from the Supreme Court of New Jersey, wherein there was also quoted the following language:

"Although the peril to life seems to be very slight, 48 chances in 23,000, nevertheless the idea is appalling to one's conscience that a human being should be compelled to take a risk of death, however slight that may be, in order that the pecuniary obligation created by the law in his favor against his employer may be minimized."

In the Henley Case, supra, this court also quotes from the case of McNamara y. Metropolitan Street Ry. Co., 133 Mo. App. 645, 114 S. W. 50, in part, as follows:

"We do not think plaintiff should be criticized and punished on account of his failure to undergo a surgical operation. He should be accorded the right to choose between suffering from the disease all his life or taking the risk of an unsuccessful outcome of a serious surgical operation."

In the case of Strong v. Sonken-Galamba Iron & Metal Co., 198 Pac. 182, on page 184, the Supreme Court of Kansas said:

"This digest shows that in the following states the Workmen's Compensation Law provides for the reduction, suspension, or rejection of compensation for the unreasonable refusal of an injured employee to accept medical treatment, or to submit to a surgical operation, or for persisting in unsanitary

practices which retard recovery: Alabama, California, Idaho, Illinois, Indiana, Mississippi, Nebraska, Nevada, New Jersey, New Mexico, Oregon, Pennsylvania, Porta Rico, Tennessee, Texas, Virginia, and Wyoming. Why were these provisions placed in the Workmen's Compensation Laws of these states? There is but one answer, and that is because their Legislatures thought that the principles there enacted into law were right.

"In England and Scotland it is held that, if an injured employee unreasonably refuses to submit to an operation, he is not entitled to compensation. Donnelly v. Baird & Co. Ltd., 1 B. W. C. C. 95; Warncken v. Richard Moreland & Son, Ltd., 2 B. W. C. C. 350; Paddington Borough Council v. Stack, 2 B. W. C. C. 402; Wheeler, Ridley & Co. v. Dawson, 5 B. W. C. C. 645; O'Neill v. John Brown & Co., Ltd. 6 B. W. C. C. 428; Walsh v. Locke & Co. (Newland), Ltd., 7 B. W. C. C. 117; Dolan & Son v. Ward, 8 B. W. C. C. 514; Wright v. Sneyd Collieries Ltd., 8 B. W. C. C. 587.

"In Donnelly v. Baird & Co., Ltd., 1 B. W. C. C. 95, the Lord Justice Clerk used the following language:

"I hold it to be the duty of an injured workman to submit to such treatment, medical or surgical, as involves no serious risk or suffering, such an operation as a man of ordinarily manly character would undergo for his own good, in a case where no question of compensation due by another existed."

A portion of the testimony on the question of the feasibility of the operation, and as to whether or not respondent was unreasonable in refusing to submit himself to a surgical operation, is as follows:

Dr. Shaw testified, in part, as follows:

"Q. The coccyx is just that little bone that comes right off of the end of the vertebra? A. Yes, it is a continuation of the spine down through the sacrum, and this portion of it is called the coccyx. * * * Q. If there was an operation performed, in all probability there would not be any further disability? A. There would be some disability, of course, because I think the coccyx is the last part of the spine, I think if you remove it there is going to be a certain amount of disability, but I wouldn't say he will be far better off if he would have it removed. Q. Isn't it a fact that the coccyx can be removed and it doesn't cause any disability? A. Well, now the operation would depend on that. Q. Isn't that the recognized opinion? A. The recognized authorities say with a severe injury to the coccyx the thing to do is to remove it. Q. They recognize it because as a matter of fact they don't consider the removal of the coccyx will entail any particular disability? A. I don't think that's the reason for the removal, I think, especially where the fracture is com-

plete and ununited, then it is the position, it hurts all the time and you can't get rid of it unless you can have it removed. Q. Isn't it recognized in all medical science there are no nerves down there where the coccyx is, that the nerves stop at the end of the sacro-iliac region? A. No, sir; coccygeal plexus. Q. If this man were operated on for the removal of the coccyx, in all probability he would return to ordinary manual labor? A. Well, I think it would improve his condition. Q. Isn't that—hasn't that been the experience of medical science on the question? A. As I stated a moment ago, if that coccyx was fractured and was ununited that would be the proper procedure. I don't know where I wouldn't think any competent surgeon would undertake to remove the whole coccyx in this case because it seems to be a compressed proposition. * * * Q. Where is it compressed? A. At the end of the coccyx and it mashed through all the different sections of the coccyx; they are compressed together, mashed together. Q. Doesn't medical science recognize that the entire whole can be removed? A. You can take your leg off, but I am not one of those fellows who believe you can do that and be as good as you was formerly. I don't believe you can have a broken bone and it be as good as it was before it was broken. I believe some pretty good surgeons claim that. Q. Your theory is, the only reason he will have some impairment is just because if he has any injury at all to the bone that there is bound to be some disability? A. Well, I think so, I think there will be a certain amount of disability if you remove the bone. * * * Q. If he was careful as far as performing manual labor is concerned, he would perform it just the same? A. I will answer that this way, but I wouldn't say what his degree of disability would be following an operation until proper time had elapsed after the operation and see the result. The result might be bad. I have seen cases where the coccyx had been removed who had a fistula following that never healed. This is the danger of removing the coccyx. * * *

Dr. Rountree testified, in part, as follows: "* * * Q. What did you find, Doctor: A. I found that the examination, general examination was of no consequence. Examination of the back showed some muscle spasm. The muscles on the right side, on the lower right spine and sacrum. Patient complained of considerable pain cn the lower portion of sacrum and coccyx, he states he has considerable pain when he sits down or lies down. External examination of coccyx reveals tenderness over the lower portion but there was no displacement; the X-ray examination revealed a very short angularity of the distal half of the coccyx to such an extent that it formed an angle of about ninety degrees of the sacrum. Q. Doctor, will an operation rectify that trouble? A. Yes, sir. Q. Is it dangerous to life and limb? A. No, sir. Q. And in your opinion

if the operation is performed any disability he has will be terminated? A. Yes, sir. * * *"

On examination by the court:

"Q. Doctor, from the testimony here about his nervous condition, has that anything to do with his nerves? A. Yes, sir; there are two types of pain which might arise from injury of the coccyx, but far the greater is of cases we find which come into the office complaining of injury and pain in the coccyx are of highly neurotic, nervous types who have absolutely no pathology as far as can be determined by physical examination or by X-ray examination in the coccyx; then there is a second group of cases which give us the history of injury and in whom we find evidence of displacement or fracture of the coccyx. The first class I men ioned I think should never be operated; they never get well. The second class of patients, of which Mr. Bates is an example, I think should always be operated because they always get well. Pain in the coccyx where there is definitely pathology causes an individual to become highly nervous and irritable and that is due to the fact that there is a sensitive plexus of nerve groups adjacent to the coccyx and these nerves become irritated due to trauma and cause the patient to become nervous and irritable. * * *"

Redirect examination:

"Q. Doctor, if this operation was performed, how long will be his disability? A. I should say approximately three or four weeks. Q. That would be about the outside? A. I think four weeks would be about the outside. The incision would heal in a couple of weeks and give him a few days and then he should be able to go back. * * *"

Recross-examination:

"Q. Isn't it very often a case that you don't get good results in an operation of that kind? A. Referring back to the classification I gave a moment ago, if a surgeon uses care and discretion in picking out his case and has something besides the patient's pain to back him up in his judgment, the results are practically always excellent and perfect, but if a surgeon operates for a condition of this kind and has nothing to base his judgment on except the patient's statement of pain, then, I think those cases will not get well. Q. And you are not positive, Doctor, this case will not get well? A. I don't know. Q. Doctor, just giving an opinion, it is possible, is it not, he can be just as worse off? A. There is no operation which is 100 per cent. perfect. Q. All right. By Mr. Follens: Doctor, what was the rest of the answer to that question. By the Witness: But we know from experience there are certain types of cases that can be cured in the vast majority of cases and I think this man belongs to that class. Q. Doctor, do I understand it is your testimony, in this case, that you could go in there and remove this man's coccyx, which is the lower end of his spine, and that he would be able to go back to work in three or four weeks' time? A. Yes, sir."

In his testimony, Dr. Shaw states that "the result might be bad, I have seen cases where the coccyx had been removed who had a fistula following that never healed. This is the danger of removing the coccyx. * * * I think there will be a certain amount of disability if you remove the bone."

Dr. Rountree stated, on cross-examination: "And are you not positive, Doctor, this case will not get well? A. I don't know."

In the case of Fyfe v. Fife Coal Co., reported in Workmen's Compensation and Insurance Reports, 1928, page 34, being a case on an application under the Workmen's Compensation Act for compensation for partial incapacity, it is stated in the syllabus of that case that:

"The matter was referred to the medical referee who said that the workman was unfit for any work and that his incapacity was due to his accident, but that he would improve if he underwent treatment in a hospital under the care of a nerve specialist. The workman's own medical advisers thought he had better not undergo the treatment, and upon that advice he had refused it. The arbitrator held that his refusal was unreasonable and the Court of Session by a majority upheld the decision:—Held, that it was a pure question of fact, and as such entirely a question for the decision of the arbitrator, whether the refusal to undergo the treatment was reasonable or not, and as there was evidence on which he could come to the conclusion to which he had come, it must be upheld."

In the report of the case Viscount Dunedin, therein stated:

"* * * The whole question of whether a refusal is reasonable or unreasonable is an absolute matter of fact. * * * It is not necessarily unreasonable of a man to follow the advice of his own medical advisers; on the other hand, it is not necessarily reasonable if there are circumstances which show that there is contrary advice and if the reasons which they give are not sufficient."

In the case of Everitt v. Haldeman-Julius Pub. Co., 257 Pac. 939, the Supreme Court of the State of Kansas stated as follows:—

"In Strong v. Iron & Metal Co., supra, (198 Pac. 182) the court said: 'The unreasonableness of the refusal of an injured employee who is seeking to recover compensation under the Workmen's Compensation Act, to permit an operation to be performed, is a question of fact to be determined from the evidence'."

Our own court in the case of Moran v. Oklahoma Engineering & Machine & Boiler

Co., 89 Okla. 185, 214 Pac. 913, states as follows:

"Whether or not the refusal to submit to operation and treatment was unreasonable was a fact which the employer must establish. * * *"

The real question for determination in this case is whether the refusal of the respondent to submit to a tendered surgical operation was unreasonable. This is a pure question of fact. Moran v. Oklahoma Engineering & Machine & Boiler Co., 89 Okla. 185, 214 Pac. 913; Consolidated Lead & Zinc Co. v. State Industrial Commission, 147 Okla. 83, 295 Pac. 210.

Under the Workmen's Compensation Law of this state, the determination of questions of fact are for the triers of the fact,— the Industrial Commission. The question of whether or not the refusal of respondent to submit to a tendered surgical operation is unreasonable is a question of fact to be determined by the Commission from all the evidence, facts, and circumstances appearing at the trial, including the testimony of respondent as well as those of medical expers, and is binding upon this court like the determination of any other fact, if there is any competent evidence reasonably tending to support the same. On the other hand, the question of whether or not the refusal of the respondent to submit to a tendered surgical operation is based upon reasonable grounds and not upon his willful, unreasonable, and negligent conduct is also a question of fact for determination by the Industrial Commission under the facts and circumstances of each particular case, and where there is any competent evidence reasonably tending to support such finding, it will not be disturbed by this court on review. This court has often announced and applied the rule that in the proceeding in the Supreme Court to review an order of the State Industrial Commission, such proceeding is to review errors of law and not of fact; the findings of fact by the Industrial Commission are conclusive upon the court and will not be reviewed by the court where there is any competent evidence reasonably tending to support the same. Stringtown Crushed Rock Co. v. State Industrial Comm., 128 Okla. 188, 261 Pac. 973; Oklahoma-Arkansas Tel. Co. v. Fries, 128 Okla. 295, 262 Pac. 1062.

In the case at bar the Commission found that the respondent was entitled to compensation by reason of his permanent partial disability, and that he was entitled to receive as compensation therefor the sum of $12 a week, being 66⅔ per centum of the difference between his average weekly wages at the time of the accidental injury and his wage-earning capacity thereafter, subject to reconsideration of the degree of such impairment by the Commission on its own motion, or upon the application of any party in interest.

The Commission in rendering its award necessarily found against the contention of petitioner on the question that the respondent was not unreasonable in refusing to submit himself to the tendered surgical operation. The Commission had all the facts and circumstances before it, including the testimony of respondent and expert witnesses. The injured employee could not choose his forum, but this court has consistently applied the rule that the Workmen's Compensation Law should be fairly and liberally construed in his favor.

We are of the opinion that the question of the unreasonableness of respondent in refusing the tendered surgical operation was a question of fact for the determination of the Commission, and, inasmuch as the Commission by its award found that respondent was not unreasonable in such refusal, and that there is competent evidence in this case reasonably tending to support such finding of fact and the conclusions to which the Commission had come, that the same is binding upon this court, like the determination of any other question of fact by the Commission, and should be upheld. However, we are of the further opinion that this question of unreasonableness to submit to a surgical operation should not necessarily be precluded and confined to February 9, 1931, the date when said operation was tendered by petitioner and the same refused by respondent, but this question should be open for further investigation, at any time, by petitioner, or by the Commission on its own motion, dependent upon a change of respondent's condition and progress towards recovery of his health and the reasonableness of his attitude relative to submitting himself to the further tender of a surgical operation.

The award is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur.

Note.—See under (1) 28 R. C. L. 828.