Note.—See under (1) 29 Cyc. pp. 432, 639, 1126. (2) 28 Cyc. p. 1365; anno. 20 L. R. A. (N. S.) 592; 40 L. R. A. (N. S.) 182; L. R. A. 1916F, 1218; 13 R. C. L. p. 425. 3 R. C. L. Supp. p. 53. (3) 4 C. J. p. 870, sec. 2846. (4) 31 C. J. p. 1115, sec. 252; 29 Cyc. p. 1639; anno. 7 A. L. R. 1340; 8 R. C. L. p. 838; 2 R. C. L. Supp p. 663. (5) 28 Cyc. p. 1515.

---

**RIALTO LEAD & ZINC CO. et al. v. STATE INDUSTRIAL COMMISSION et al.**

No. 15818—Opinion Filed Sept. 29, 1925.

1. **Master and Servant — Workmen's Compensation Law — Nervous Breakdown After Recovery from Injuries Compensable.**

Where, as the proximate result of an accidental personal injury sustained by an employe arising out of and in the course of his employment, such employe, after all objective and subjective symptoms of actual physical injury are removed, suffers from a nervous breakdown and a neurasthenic condition ensues attributable to such injury which precludes the employe from resuming his work in his former occupation, such mental condition is an injury arising out of and in the course of his employment and is compensable under the provisions of the Workmen's Compensation Act.

2. **Same—Award for Total Disability Erroneous Where Employe Earning Half Wages.**

Where, upon the hearing of a motion of the respondent and insurance carrier to discontinue compensation to the complainant or to modify the same, it appears from the undisputed evidence that the injured employe is engaged in performing lighter work than that upon which he was engaged when injured, but at about one-half of the wage he received in his prior employment, it is error to award the employe a weekly sum on the basis of total disability. In such case the award should be based upon 50 per centum of the difference between the employe's wage at the time of the injury and the wage he was receiving at the time of the hearing on the motion.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from Industrial Commission.

Original action by Rialto Lead & Zinc Company and Associated Employers' Reciprocal, as petitioners, against the State Industrial Commission and George Johnson, as respondents, to reverse an order of the State Industrial Commission in refusing to discontinue compensation to George Johnson. Order reversed.

Burford, Miley, Hoffman & Burford, for plaintiffs in error.

George F. Short, Atty. Gen., and Baxter Taylor, Asst. Atty. Gen., for defendants in error.

Opinion by PINKHAM, C. The record in this proceeding discloses that George Johnson was in the employ of the Rialto Lead & Zinc Company, as a machinist, and that on October 31, 1922, he was injured by lifting on a machine, the nature and extent of his injury being a badly wrenched back and a swelling in his groin. Medical attendance was provided by the employer immediately after the accident. The employer and insurance carrier paid compensation until June 1, 1923, without any order having been entered by the Industrial Commission, at the rate of $11.54 per week, upon an average wage of $4.00 per day. On June 20, 1923, the employer and insurance carrier notified the commission that payment had been suspended or stopped for the reason that the claimant's disability as a result of the injury sustained on October 31, 1922, terminated on June 13, 1923, and the claimant is fully recovered and able to return to work. On October 12, 1923, a hearing was had before the commission on motion of respondent and insurance carrier to discontinue compensation. The commission, after examining the records on file and the testimony taken, denied the motion. On November 20, 1923, the respondent and insurance carrier again filed a motion with the commission to discontinue compensation, stating in said motion that payment of compensation to the claimant had been stopped as of November 14, 1923, payment having been made to that date, and that the reason that payment had been stopped is that the claimant has fully recovered from the injuries upon which complaint was based in so far as the same are compensable under the Workmen's Compensation Act, and that claimant was, prior to November 16, 1923, able to return to work and was not then suffering from any injury which was compensable under the Workmen's Compensation Act. In support of this motion reference was made to the report of Dr.

Blesh, filed with the commission. On May 12, 1924, a hearing was had on this motion, and on the 3rd day of September, 1924, the commission made the following findings of fact:

"First, that the claimant received an accidental injury arising out of and in the course of his employment with the respondent, Rialto Lead & Zinc Company, on October 31, 1922, by a fall from a pole landing on his back; second, that the respondent and insurance carrier paid compensation until June 1, 1923, when it was discontinued upon motion; and that a hearing was held in Miami on the 11th day of September, 1923; an order was made on October 11, 1923, overruling said motion; third, that on November 27, 1923, an examination was made by Dr. A. L. Blesh, of Oklahoma City, and that neurasthenic elements largely predominate; that said neurasthenia is often associated with injury and must be recognized; fourth, that the claimant's wages at the time of injury were $4 per day; fifth, that the claimant worked three weeks, from November 16, 1923, to December 8, 1923, at $8 per week, and that he is entitled to 50 per cent. difference in wages, or a total of $24.00; that he is also entitled to compensation from December 8, 1923, to September 3, 1924, a period of 38 weeks and three days at the rate of $11.54 per week"

—and made its order in accordance with said findings of fact and overruled the motion of respondent and the insurance carrier. The respondent and insurance carrier filed their petition in this court to reverse the order of the commission of September 3, 1924, alleging numerous grounds for reversal of said order. The assignments of error are presented under three propositions to the effect: First, that under the evidence the commission should have granted the motion to discontinue compensation; second, that if the motion to discontinue should have not been granted in toto, then it was error in granting an award as for total disability when all the evidence showed the claimant was working and earning wages; third, that it was an abuse of discretion to make an award in a case of this kind ten months after the motion was filed, and deny the motion, not as of the date of filing, but as of the date of the order.

The only questions to be determined under the record in this case are: First, whether at the date of the last hearing before the State Industrial Commission, on the motion of the respondent and insurance carrier to discontinue compensation, the claimant was or was not suffering from any injury compensable under the Workmen's Compensation Act; and second, whether in view of the evidence before the commission at the

time of the hearing on the said motion, the commission erred in awarding total disability and denying even a modification of the award.

With respect to the first proposition, there is no dispute that the claimant sustained an injury arising out of and in the course of his employment on the 31st day of October, 1922. Medical attendance was immediately provided and compensation was started by the insurance carrier on the 14th day of December, 1922, at a weekly rate of $11.54, based on the complainant's average daily wage of $4.00. The claimant has been examined by some six or seven doctors and their reports to the commission are incorporated in the record. These reports, briefly summarized, show that the claimant was under the care of these physicians at a hospital and in his home for approximately a year; that he suffered a good deal of pain; and that a small operation was successfully performed. All of the reports conclude that the claimant was not suffering from any permanent disability. The commission's medical adviser made a physical examination of the claimant on March 22, 1923, and concluded that from the symptoms and history of the case, the claimant has been and is suffering from a traumatic injury to the lumbar regions and muscles of his back, and that the injury has developed to a neurosis, but that he is satisfied that with proper care the claimant should be able to return to his work in a short time "and that there should be no disability.". At the hearing on the motion to discontinue compensation, the claimant testified as to his treatment and operation, and stated that so far as the operation was concerned, the same was successful, but that his kidney pained him continually and that he was unable to work at his former occupation. The evidence shows that he attempted to do so, and after working one or two days at his old position, he was obliged to quit work and sought other and lighter employment elsewhere. The motion of respondent was overruled by the commission and the claimant was ordered to be sent back to the commission's medical adviser, Dr. Buchanan, who reported on October 29, 1923, that there was no physical impairment except to the kidney, and that "this could be due to an inflammation from other causes than an injury, and that it is my opinion that in this case it is not due to the injury. He complains of pain in the region of the last lumbar vertebra," etc. The doctor recommended rest and immobilization. The claimant was then sent by the commission to Dr. Blesh of Oklahoma City, whose report was filed November 28, 1923.

Dr. Blesh made, and caused to be made, a very exhaustive examination and series of tests personally and by the staff of Wesley Hospital.

Dr. Blesh says in his report:

"The physical examination of this patient being negative and taking into consideration that his history, which showed a decided tendency to dissatisfaction with his medical attendance, leads to a strong indication that there is a large neurasthenic element in this case. It seems, also, that the fall must have done damage to the right testicle and possibly the urinary tract, since there was a history of swelling of the testicles promptly following the injury and since there was pus discharged per urethra. * * *"

In his conclusion Dr. Blesh states:

"The management of the case otherwise will be psychic since there are no other demonstrable lesions in his body and since the neurasthenic elements largely predominate (as stated above, neurasthenia is often associated with injury and must be recognized). In the interest of the recovery I have to-day discharged him from the hospital advising him to remain in the city under my observation for a period of time in order to aid him in getting a right outlook on life."

The Attorney General frankly states in his brief that he does not think the claimant is suffering at this time with physical disability in view of the conclusions reached by the various physicians, but that the claimant has neurasthenia and that this trouble has its origin in the accidental injury. It is said that this court has never passed on the question of whether a neurotic whose trouble has its origin in an accidental injury is entitled to compensation. We do not hesitate to say, that when a mental condition comprehended under the term of "neurasthenia" is shown by competent evidence to exist as a direct result of a physical injury sustained by an employe arising out of and in the course of his employment, and which condition deprives the employe of working in his former occupation, the same would be compensable under the Workmen's Compensation Act of this state.

It is well settled by a long line of English decisions based upon Workmen's Compensation Acts that where neurasthenia intervenes after an accident and produces incapacity, to entitle the workman to compensation as for an accidental injury, the preceding injury must be shown to be the proximate cause of the neurasthenic condition. See note in the case of Vennen v. New Dells Lbr. Co., 161 Wis. 370, Ann. Cas. 1918B, 293, 317.

In Eaves v. Blaenclydach Colliery Co. (1909) 2 K. B. (Eng.) 73, it is said in the opinion:

"The learned judge says he thinks that although the man honestly believes he is not able to do the work and although he is not shamming or malingering, it is sufficient for the employers to show that the muscular mischief is at an end. I am entirely unable to assent to that view. The effects of an accident are at least twofold; they may be merely muscular effects—they almost always must include muscular effects—and there may also be, and very frequently are, effects which you may call mental, or nervous, or hysterical, whichever is the proper word to use in respect to them. The effects of this second class, as a rule, arise directly from the accident from which the man suffered, just as much as the muscular effects do, and it seems to me entirely a fallacy to say that a man's right to compensation ceases when the muscular mischief is ended, though the nervous or hysterical effects still remain. * * * The result of this judgment, however, is that the man is still suffering from the accident, and he has not wholly recovered from the nervous effects of the accident, which are just as real and just as important as the muscular effects and make him unable to work."

The commission had before it the opinions of the doctors and the claimant and concluded that the disability had not ceased, and his statement that he was unable to to work at his former occupation was true, and that his mental condition was the result of his injury. If the claimant in this case was malingering or shamming, there is nothing in any of the voluminous reports of the physicians who examined him and had him under their care and treatment for a considerable period of time to suggest it. In fact, some of the reports expressly state that the claimant was not malingering and certainly the finding of the commission negatives that conclusion.

Under the second proposition, that the commission erred in granting an award for total disability, the contention of the respondent must, we think, be sustained. All the evidence disclosed by the record shows, without conflict, that at the time of the hearing on respondent's motion the claimant had been and was then employed every day. There was no evidence of total disability. It is well established by the decisions of this court that the purpose of the Compensation Act is not indemnity for any physical ailment, but for loss of earning power, disability to work. Cosmos Mining Co. v. Ind. Com., 101 Okla. 283, 225 Pac. 720; Skelton Lead & Zinc Co. v. Ind. Com., 100 Okla. 188, 229 Pac. 255. Where the evidence shows that the claimant is work-

ing and earning wages, he is not entitled to a total disability award, either permanent or temporary, unless by virtue of specific losses made by statute, the equivalent of total disability, such as the loss of both hands, both feet, both legs, etc. Section 7290, Subd. 1, Comp. St. 1921. In case of permanent total disability under this subdivision, the claimant is entitled to 50 per centum of his average weekly wages during the continuance of such total disability not exceeding 500 weeks. In all other cases, permanent total disability shall be determined in accordance with the facts; for temporary total disability, 50 per centum of average weekly wages for not more than 300 weeks (subd. 2); for permanent partial disability, partial in character but permanent in quality, 50 per centum of the average weekly wages for certain specific injuries (subd. 3).

The last paragraph of this subdivision provides as follows:

"In all other cases in this class of disability, the compensation shall be 50 per centum of the difference between the average weekly wages and his wage earning capacity thereafter in the same employment or otherwise payable during the continuance of such partial disability. * * *"

Subdivision 4 of section 7290, supra, provides for compensation in cases of temporary partial disability as follows:

"In cases of temporary partial disability, except the particular cases mentioned in subdivision 3 of this section, an injured employe shall receive 50 per centum of the difference between his average weekly wages and his wage earning capacity thereafter in the same employment or otherwise. * * *"

Any change in the circumstances of the claimant may be ground for increasing, diminishing, or terminating the allowance. Section 7296, Comp. St. 1921.

In Cosmos Mining Co. v. Ind. Com., supra, the question was presented as in this case upon a motion to discontinue compensation. This court there held that the extent of disability, except in cases of the specific losses provided for in the statute, is to be measured by the ability to earn wages, and that where claimant was earning wages an award of neither permanent nor continuing total disability was justified, and that the measure of the ability to earn was not to be confined to the occupation or employment in which the claimant was engaged when injured.

In the instant case the claimant testified that he was, at the date of the hearing, and had been since early in 1924, working in a cigar and news stand and earning a wage or compensation of about $12 a week, and that he has suffered none of the specific losses mentioned in the statute.

The Cosmos Case, supra, was followed in the case of Integrity Mutual Casualty Co. v. Garrett, 100 Okla. 185, 229 Pac. 282, in which the court quoted with approval from Ruling Case Law as follows:

"It may be said, however, generally, that incapacity or disability cannot be found to be total where it appears that the claimant's earning power is not wholly destroyed and that he is still capable of performing remunerative employment. In such case, he is under the obligation of making active efforts to procure such work as he can still perform."

In Skelton Lead & Zinc Co. v. Industrial Commission, supra, this court announced the rule that ability to earn, regardless of the character of employment, caused the total disability to cease. It is evident that the commission in the instant case based the award for total disability upon the theory that the claimant was totally incapacitated from performing the heavy manual work performed by him prior to his injury, and ignored the fact testified to by the claimant himself, that he was engaged in work of a lighter character for which he was receiving at the time of the hearing about one-half of his former wages before the injury.

"It is error for the Industrial Commission to confine its inquiry into and base its award solely upon the disability of the complainant to engage in the same employment in which he was engaged prior to receiving the injury." Old Ben Coal Corp. v. Ind. Com. (Ill.) 134 N. E. 74.

It is considered, from a careful review of the evidence adduced on the hearing of respondent's motion to discontinue compensation, that the order of the commission of September 3, 1924, making its award on the basis of total disability is erroneous.

For the reasons stated, the award of the Industrial Commission is reversed, and the cause remanded with directions to modify the order of September 3, 1924, by basing the claimant's compensation from December 8, 1923, to May 12, 1924, the date of the hearing on respondent's motion, upon 50 per centum of the difference between the claimant's average weekly wage and his wage earning capacity after the injury in the same employment or in some other employment.

By the Court: It is so ordered.

Note.—See under (1) Workmen's Compensation Acts, C. J. pp. 65, 66, § 55; anno.

1917D, 112; 20 A. L. R. 62. (2) Workmen's Compensation Acts, C. J. pp. 94, sec. 83, 95, sec. 85; L. R. A. 1916A, 143; 17 A. L. R. 214, 212; 28 R. C. L. p. 820 4 R. C. L. Supp. p. 1867.