WADE LAHAR CONSTRUCTION COMPANY and Employers Mutual Liability Insurance Company, Petitioners,

v.

Sylvester HOWELL and the State Industrial Court, Respondents.

No. 39898.

Supreme Court of Oklahoma.

Nov. 7, 1962.

Sanders, McElroy & Whitten, Dale F. Whitten, Tulsa, for petitioners.

Floyd L. Walker, J. W. Hastain, Tulsa, for respondent.

JACKSON, Justice.

In the present proceeding we are called upon to review an award of the State Industrial Court finding claimant's residual disability to have undergone a change from 30.5 per centum permanent (partial) to permanent total.

While engaged for the employer in construction work on July 21, 1956, claimant was in process of removing dirt beneath a pipeline when the ditch suddenly caved in burying him completely. He remained below the surface for an undisclosed length of time. When removed, he was unconscious during a period of undetermined duration. Taken to the hospital, he was later found to have suffered the following injuries: (a) a fracture of the left femur which required open reduction and internal fixation; (b) head trauma; (c) skull fracture extending from the mid-portion of the parietal bone downward and anteriorly to a point "where it was lost in the shadows of the mastoid"; (d) subarachnoid brain hemorrhage with traumatic asphyxia and resultant post-concussion syndrome of headaches; (e) injury to the eyes. Neither the leg nor the eye injury appear to have produced any residual impairments. During his early convalescence claimant began to exhibit definite personality changes which were attributed to the head trauma. After his initial discharge on August 21, 1956, he was readmitted to the hospital on October 3 of that year where he remained for 6 days under care of Dr. A., a neuro-surgeon and Dr. H., a neuro psychiatrist. The entire healing period during which claimant was totally incapacitated, lasted nearly 54 weeks.

At the original hearing upon the claim the sole issue before the trial tribunal related to the extent of claimant's disability from his severe injury to the head. All the physicians agreed that while there was no "objective evidence of neurologic damage" to the brain or to the central nervous system, residual disability lay in the "psychiatric realm". The doctors were also in accord as to the presence of genuine manifestations of "psychiatric aberrations" attributable to the accidental injury. At least two physicians described the condition as post-traumatic neurosis, and one pointed out that the residual disability was "hard to estimate because of the inability to find the amount of brain damage done in an accident of this kind." The expert evidence concerning the degree of claimant's permanent impairments was in sharp conflict, the opinions ranging from 10 per centum partial to total disability.

On November 7, 1957, the trial judge found claimant to be permanently partially disabled to the extent of 30.5 per centum and allowed him compensation payable in weekly installments. This award became final and has been fully paid.

The proceeding under consideration had its inception when claimant filed, on May 11, 1961, a "motion to reopen" on a change of condition for the worse. After a hearing at which employer did not introduce any evidence in opposition to the motion, the trial judge entered the award under review finding claimant's condition to have undergone a change since the last prior award from 30.5 per centum permanent (partial) to permanent total disability and allowed the additional benefits adjudged in claimant's favor to commence at the end of the compensatory period fixed in the prior award.

The award under review rests upon the expert opinion of Dr. H., a neuro-psychiatrist. The pertinent part of his letter-report recites:

"There is evidence of progressive deterioration in the condition of Mr. Howell (claimant). *He is very definitely worse.* The symptoms previously described have persisted and *gradually become fixed and rigid* as in the chronic phase of such illnesses. Mr. Howell is now almost withdrawn and in need of constant attention. * * * I know of no treatment that would hold the promise of relief. This patient can only contemplate institutionalization for an indefinite period of time. * * * it is my opinion that the accident

* * *· on July 21,· 1957 (sic), together with a pre-existing· personality inadequacy precipitated and caused his present condition". (emphasis supplied).

The opinion of Dr. H. is based in part on a final summary made by the Veterans Administration Hospital in Little Rock, Arkansas, where claimant was confined on three separate occasions since the entry of the original award, and on his own observations of certain new factors. It is clear from Dr. H.'s report that following the entry of the original award there has been a gradual progression of claimant's symptoms, which became "fixed and chronic" in character. The medical evaluation is therefore not vulnerable to objection that it constitutes a mere reappraisal of disability identical to that which had been adjudicated in the prior hearing. Oklahoma Gas & Electric Company v. State Industrial Court, Okl., 366 P.2d 609, 613.

■ Disability from a psychiatric condition produced by an accidental injury is compensable in the same manner as any other impairment of the body. Rialto Lead & Zinc Co. v. State Industrial Commission, 112 Okl. 101, 240 P. 96, 44 A.L.R. 494; Seismograph Service Corporation v. Cosby, Okl., 317 P.2d 215, 218; see also Woodward & Company v. State Industrial Commission, Okl., 349 P.2d 638.

■ A .change in claimant's physical condition may be established when a pathology, not fully ascertainable before in terms of its relation to, and effect upon, compensable disability, is shown to have manifested its presence and become detectable through a process of progressive developments occurring subsequent to the last prior order or award. Oklahoma Gas & Electric Company v. State Industrial Court, supra; Capitol Well Servicing Company v. Levescy, Okl., 371 P.2d 905, 909.

The medical report, as outlined, amply meets the standard of proof necessary to establish a change in condition. It stands undisputed that claimant's disability has increased to permanent total. The factum of a changed condition attributable to the original injury, occurring since the last prior order and· resulting in additional disability is supported by competent evidence.

We are urged that the report of Dr. H. lacks probative value because this physician had viewed claimant's disability as permanent total even before the last prior award. This assertion does not accord with the record. In the report submitted to the trial tribunal in the original hearing Dr. H. stated that while claimant's condition "has apparently led to almost total incapacity to function", a final evaluation cannot be made without at least one month of observation in "a psychiatrically oriented environment". The conclusion then reached by Dr. H. was in its essence an expression of anticipated futurity and his opinion could not afford a basis for an award of permanent total disability. See, Gleason v. State Industrial Court, Okl., 371 P.2d 89, 91.

■ But regardless of the nature of Dr. H.'s opinion as to the extent of claimant's disability at the time the original award was made, this physician was competent to testify in the proceedings on motion to reopen. A physician who in a prior hearing before the trial tribunal evaluates claimant as being permanently totally disabled is not incompetent, as a matter of law, to testify in a subsequent proceeding that there was an interim change in claimant's condition as a result of which the aggregate compensable disability has increased to permanent total. The physician's prior testimony does not necessarily operate to vitiate his opinion given at a subsequent hearing. In its final analysis the question is one of weight and credibility and not that of competency of evidence. Under our Workmen's Compensation Act, 85 O.S.1961 § 26, the State Industrial Court, and not the Supreme Court, is the sole and ultimate arbiter of the credibility of witnesses, be they lay or expert, and of the weight to be accorded to their testimony, Spartan Aircraft Company v. Stockton, Okl., 370 P.2d 13, 15, 16; Oklahoma Gas & Electric Com-

pany v. State Industrial Court, supra; United States Gypsum Co. v. Pendleton et al., Okl., 340 P.2d 467, 468.

Employer misconstrues our decision in Sinclair Refining Company v. Duncan, Okl., 297 P.2d 563 as authority for the rule that a physician whose original estimate of permanent total disability has once been rejected may not be a competent witness to establish that degree of disability on the theory of a subsequent change in condition. Our conclusion in the cited case was based on the rule that the trial tribunal may not review its prior orders, which have become final, in order to correct errors made therein. The distinction between the Sinclair case and the present is quite obvious. In the former case, all the physicians in the original hearing evaluated claimant's disability as permanent total. Hence, the trial tribunal manifestly erred in determining compensable disability at a lower degree. In the case under consideration there was, in the original hearing, a wide divergence in the opinion of the physicians and therefore the trial tribunal did not err in fixing the rate of disability within the range disclosed by medical evidence. See, in this connection, E. L. Mendenhall Company v. Kell, Okl., 359 P.2d 234, 237.

Lastly, employer contends there was error in failing to determine the precise point of time at which the change of condition occurred.

■ As disclosed by the record, the change consisted of a progressive deterioration in claimant's condition from and after the last award. The reasonable inference to be drawn is that the increase of disability has come about gradually and without intervention of any definite event. The trial tribunal found that there had been a change in the condition since the last award and allowed the additional benefits adjudged to commence at the expiration of the compensatory period fixed in the prior award. There was no error in this determination. The finding affords a sufficient basis for the award. Spartan Aircraft Company v. Stockton, supra; Lumbermen's Supply Co.

et al. v. Mackey et al., 201 Okl. 296, 205 P.2d 870, 871; Phillips Petroleum Co. v. Anguish et al., 201 Okl. 691, 209 P.2d 689, 691.

The determination of a precise date at which a change of disability arises is necessary only to demonstrate that its occurrence is subsequent to the last prior award, and to prevent an allowance of benefits for a period included in the previous decision. See, Capitol Well Servicing Company v. Levescy, Okl., supra; Standard Brands, Inc. v. Gregor, Okl., 328 P.2d 181. Where, as here, the evidence is clear and undisputed that the change for which additional compensation was sought occurred after the last prior award, and the increased benefits allowed did not fall concurrently with those payable under the prior award, the trial tribunal's failure to fix the precise date of the change will not be deemed to constitute error.

■ Employer seems to argue that the trial tribunal should have made an allowance in its favor for that part of the aggregate disability which was attributable to pre-existing "personality inadequacy". We cannot accede to this view.

Whatever personality deficiency claimant may have had was dormant or latent in its nature and did not disable him in any manner. The Workmen's Compensation Act, 85 O.S.1961 § 1 et seq., does not undertake to apportion the degree or extent by which an underlying infirmity is augmented or hastened by an accidental injury superimposed upon it, and the entire disability arising from the cumulative effect of pre-existing dormant condition, coupled with that due to the accident, interacting upon each other and operating together, furnishes the proper basis for compensation. Marlar v. Marlar, Okl., 353 P.2d 17, 19; National Zinc Company v. Hainline, Okl., 360 P.2d 236, 239.

The proceeding is free from errors of law and the challenged finding rests on competent evidence.

Award sustained.