BROOKS & McCONNELL, INC., and Liberty
Mutual Insurance Company, Petitioners,

v.

Robert Samuel STRONG and State
Industrial Court, Respondents.

No. 40908.

Supreme Court of Oklahoma.

Oct. 27, 1964.

Rhodes, Crowe, Hieronymous, Hollo-
way & Wilson, Oklahoma City, for peti-
tioners.

Dick Bell, Seminole, Charles R. Nesbitt,
Atty. Gen., Oklahoma City, for respond-
ents.

DAVISON, Justice.

On August 19, 1963, while in the employ-
ment of Brooks & McConnell, Inc., Rob-

ert Samuel Strong, claimant, was helping load a barrel of tar in a pickup truck when his foot slipped, he fell over backward from the vehicle striking the ground, injuring his back. His employer sent him to a local doctor who on the same day transferred claimant to the McBride Bone and Joint Hospital in Oklahoma City. He was hospitalized for approximately one week and put in a body cast for six weeks. He was paid temporary total disability compensation from August 20, 1963, through November 4, 1963.

The sole issue submitted to the State Industrial Court for its determination was the extent of permanent disability, if any, to claimant resulting from the injury. The trial judge found that claimant had sustained a fifteen per cent permanent partial disability to the body as a whole. Both parties appealed to the court en banc where the award was affirmed.

Employer and its insurance carrier, Liberty Mutual Insurance Company, seek a review of the award by this court, and for vacation of the order of the lower tribunal contend:

"That there was no competent evidence introduced before the State Industrial Court to justify or authorize the State Industrial Court to enter an award for permanent disability in favor of the respondent, Robert Samuel Strong, and against the petitioners herein."

Dr. J testified for claimant by way of a written report and also by deposition. His opinion was that as a result of the accident on August 9, 1963, claimant had sustained 40 per cent permanent partial disability to the body as a whole.

Petitioners complain that claimant had sustained a compression fracture of the first lumbar vertebra when he fell from a tree in 1952, and had strained his back in 1957, but that claimant failed to tell Dr. J about the previous injuries, therefore Dr. J's testimony, being based on an incomplete and erroneous history, has no pro-

bative value to support the lower court's finding that claimant had sustained 15 per cent permanent partial disability to the body. Petitioners vigorously urged that the case of Acme Flour Mills v. Bray, 185 Okl. 516, 94 P.2d 828, is an identical situation and should therefore be controlling in the case at bar. Petitioners cite a number of cases wherein the Acme Mills case has been cited and discussed favorably to their position.

The Acme Flour case holds, in effect, that where it is required to establish the disability by medical expert testimony, such medical expert testimony must be based substantially upon a correct history of the case.

There is a material distinction in the Acme Flour Mills case and the one we are now considering. In the Acme case the Industrial Court found that claimant had sustained an injury to his groin. The evidence of claimant was that at the time of his accident he was suffering from an acute attack of gonorrhea and that he strained himself while helping an electrician repair a motor. His employer sent him to a physician who found claimant's condition and operated. Claimant returned to work for about four months when he voluntarily quit and filed a claim for compensation. His only medical evidence was a statement from a Dr. S, whose opinion was, after examination of claimant and a history given by claimant which made no reference to the acute attack of gonorrhea, the claimant had "sustained an injury in the way of a strain involving the cord and vessels of the scrotum necessitating an operation which was performed and that as a result of the injury and operation he has a temporary disability for 60 days and thereafter a 10 percent permanent partial disability to do manual labor." With reference to the above opinion of Dr. S, this court said:

"* * * The witness did not testify that respondent had an injury to his groin as found by the Commission but on the contrary testified that respond- ·

ent had a strain which involved the cord and vessels of the scrotum. This opinion of the witness appears to have been based entirely upon a history given him by the respondent and which admittedly did not completely, correctly and fully advise the witness with respect to respondent's condition at the time of his alleged injury and hence his opinion being based upon a faulty premise and without a consideration of all the factors involved had no probative value, as the respondent had the burden of establishing his claimed disability by the testimony of skilled and professional persons. * * * "

The award was vacated.

■ In the case at bar it is not argued that claimant is not disabled; nor did the Industrial Court find that claimant sustained an injury for which there is no medical evidence as was the situation in the Acme Flour case. In the case cited there is a fatal variance between the history assumed by the medical expert and that which the proof adduced. In the present case there was no discrepancy between the facts of the accident adduced in evidence and those given to the physician.

· Dr. J, in the instant case, set forth in his written report the following:

"HISTORY: His foot slipped and he fell out of a truck backward striking his back on the ground. He was placed in a pickup and removed to the hospital in Holdenville, Okla. X-rays were made and injections given for pain. He was sent to McBride Hospital in approximately one hour in an ambulance. X-rays were made and three days later a body cast was applied. He remained in the hospital for one week. He returned home for three weeks and then back to McBride Hospital where he was treated as an outpatient and returned home. He returned again in three weeks and the cast was removed. He was released by Dr. Margo on 10–25–63. He states that he has difficulty in sleeping.

\* \* \* \* \* \*

X-RAY EXAMINATION: AP and lateral lumbar views were made. That AP view reveals a curvature to the right beginning at the upper border of the 5th lumbar and extending to the lower border of the body of the 1st lumbar. There is also very mild arthritic changes in the crest of the ilia. The lateral view reveals what appears to be a compression fracture of the anterior surface of the 1st lumbar. The posterior surface of the body of the 1st lumbar is three and one half cm and the anterior surface is two cm. There is also a slight narrowing of the 5th intervertebral space and some roughening of the anterior and inner surface of the body of the 5th lumbar.

"COMMENT. This man was badly in need of a back brace which I advised and he has been fitted with the brace since my examination on 11–4–63. Taking into consideration the History, Physical and x-ray findings it is my opinion this man has sustained 40% permanent partial disability to the body as a whole for the performance of ordinary manual labor as a result of his injury of 8–19–63."

Dr. J further testified:

"Q. And what information was conveyed to you, Doctor in addition to what you already had?

"A. He had an injury to his back six or seven years ago * * *.

"Q. Is that all of the information you got?

"A. Well, he continued to work but it caused him not a great amount of injury or inconvenience at all, is my note on it that I put down this morning.

"Q. And is that all of the information you had about the old back injury?

"Yes, sir.

"Q. You didn't know whether it was a strain or a fracture or what it was?

"A. All I had was that he had an injury but didn't lose or very much, if any, work, * * *.

* * * * * *

"Q. At the time you wrote this report which you have read into the record here you assumed that the Claimant had *give* you a complete and correct history of the case?

"A. I had nothing to judge otherwise, I got this report this morning but since he continued to work I didn't feel or figure the significance of it amounted to very much so I didn't see any reason to withcall my report and rewrite it.

* * * * * *

"Q. And then I said assume if he settled it for six or seven hundred dollars and had worked all time since then would it in any way have changed your opinion and I would like to ask you that for the record, would that in any way change your opinion?

"A. No, wasn't enough significance there to produce the trouble he had, if there had he wouldn't have been able to work.

* * * * * *

"Q. Now, Doctor since you've heard Mr. Strong's statement about the old injury is it still your opinion that, as you testified to previously, it was of no consequence so far as this last injury is concerned?

"A. That's right."

We feel the expert medical testimony of Dr. J was based substantially upon a correct history of the case.

The case of Tillery & Jones v. Sigler, Okl., 265 P.2d 484, is analogous to the case before this court. Claimant Sigler alleged he slipped and fell, hurting his back. He was taken to a hospital and "treated for a little more than one week." He too was given a brace to wear. The Industrial Court awarded Sigler compensation. Petitioners there, as here, contended the medical evidence offered by a physician for claimant was based on facts not properly detailed by the claimant. Claimant did not inform the doctor of a prior injury to his back some three years before his last injury or of a prior injury to his stomach. Petitioners in that case cited our Acme Flour Mills opinion. We said:

"* * * Therein the order vacating the award was based on the fact that the chief cause of the disability as shown by medical evidence of the employer was not stated to the physician for claimant. In the case under consideration there is no evidence in the record which shows that any disability claimant now has is due to either of these injuries and nothing in the report of the physician for claimant indicates that had the physician been advised of these two injuries his report would have been different. * * *"

We sustained the award in the Sigler case.

In the instant case, the doctor for claimant testified that his opinion would not have been different had he known of the prior injury.

■ We have held that whether the disability resulted from a prior injury or is an aggravation of a prior injury or is caused by a new and independent injury is a question of fact solely within the province of and for the determination of the State Industrial Court and if there is any competent evidence to sustain the finding, an award based thereon will not be disturbed. Skelly Oil Co. v. State Industrial Commission, Okl., 311 P.2d 810; Tillery & Jones v. Sigler, supra; Prince Chevrolet Co. v. Young, 187 Okl. 253, 102 P.2d 601.

■ There is competent evidence reasonably tending to support the finding that the disability of claimant resulted from the accidental injury of August 19, 1963. In addition to the testimony of Dr. J, peti-

tioners' Dr. M testified by written reports that when claimant was received at the McBride Bone and Joint Hospital he was "having a great deal of pain in his lower back and with difficulty working his feet. He complained of numbness in his feet. * * * On examination, there was tenderness in his back with some swelling, especially in the area of the upper lumbar region. He had function of both lower extremities, but definite weakness of the toe flexors, and extensors of the feet, bilaterally. He had an area of numbness over the dorsal aspect of both feet. X-rays brought in, and further x-rays made here revealed a fifty percent compression of the body of the first lumbar vertebra." That in his opinion claimant had sustained a 10 per cent permanent partial disability to the body as a whole.

Petitioners later took the deposition of Dr. M whereby he testified that had he known about the prior injuries his opinion "would be that he apparently sustained just a strain to his back, if he had the alleged injury, and that he did not have a fracture; he recovered from this very well and therefore would have no permanent disability as a result of this last injury."

Dr. M's later testimony does not necessarily operate to vitiate his entire opinion first given. In its final analysis the question is one of weight and credibility to be accorded any testimony and here the lower tribunal evidently relied on Dr. J's testimony over that of Dr. M.

The State Industrial Court, and not the Supreme Court, is the sole and ultimate arbiter of the credibility of witnesses, be they lay or expert, and of the weight to be accorded their testimony. Wade Lahar Construction Co. v. Howell, Okl., 376 P.2d 221; Fullhart Maytag Co. v. Stapleton, Okl., 356 P.2d 350; Skelly Oil Co. v. Ellis, 176 Okl. 569, 56 P.2d 891.

The award is sustained.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.