**OKLAHOMA CITY, a municipal corporation, Petitioner,**

v.

**Cynthia Kay SCHOONOVER and the State Industrial Court, Respondents.**

**No. 46822.**

Supreme Court of Oklahoma.

April 8, 1975.

Rehearing Denied June 3, 1975.

Walter M. Powell, Municipal Counselor, by R. Thomas Lay, Asst. Municipal Counselor, Oklahoma City, for petitioner.

H. W. Nichols, Jr., Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, for respondents.

LAVENDER, Justice:

This proceeding seeks review and vacation of an order awarding a surviving widow, and minor children, death benefits by reason of their decedent's death during covered employment.

Form 3A claim alleged aggravation of an ulcer condition, necessitating surgery which resulted in death. Petitioner, hereafter respondent, defended upon the ground death did not occur from injury sustained in hazardous employment, but resulted solely from causes unrelated to employment.

After hearing the trial judge found, in pertinent part:

"That Kenneth W. Schoonover, deceased, sustained an accidental personal injury by stress and strain of deceased's occupation as police officer, which stress and strain aggravated a pre-existing ulcer condition, resulting in the death of deceased on October 27, 1972. That respondent had actual notice and was not prejudiced by failure to give 30 day written notice."

Respondent contends this order must be vacated for the reason this finding was unsupported by competent evidence, and constituted an abuse of discretion. The argument, supported by principles enunciated in our decisions, may be summarized in the following manner. A claimant must establish an injury was accidental as the term is defined under the Act, 85 O.S.1961 § 1 et seq. Injury does not arise out of employment, within meaning of the Act, unless the result of risk reasonably incident to employment, and there is a causal connection between the work performed and resulting injury apparent to a rational mind upon consideration of all the circumstances. Specific cause of death was a totally unexpected complication following surgery, and not a legitimate consequence of accidental, compensable injury. In re Greer, Okl., 356 P.2d 356 (1960). Therefore, if deceased's debility (duodenal peptic ulcer) was not an accidental injury, then death which resulted from surgical complications cannot be compensable, and the order under review resulted from an abuse of discretion.

Evidence adduced before State Industrial Court established matters hereafter summarized. Deceased was 29 years old, had been a police officer approximately five years, and had been treated for peptic ulcer condition in 1964. When applying for employment with police department in 1967, the examining physician (Dr. W.L. B.) reported deceased's ulcer had responded to concentrated therapy and was healed completely. Deceased began employment as a scout car officer, serving rotating shifts which interfered with settled life habits, and also engaged in extra employment. Approximately one year after employment deceased began experiencing physical difficulty evidenced by nausea and vomiting, sometimes with showing of blood, upon returning home from regular duty. There was evidence indicating employment was stressful and sufficient to create anxiety and apprehensiveness.

In 1970 deceased sought medical attention from Dr. T.E.V., who diagnosed recurrence of peptic ulcer and placed deceased on regimen of medication and diet. This seemed to bring the condition under control, and deceased resumed work without further complaints. In February, 1972, deceased returned to Dr. T.E.V. complaining of abdominal pain, distress, nervousness and anxiety. Treatment was continued by diet and medication, with tranquilizers prescribed to alleviate some complaints.

Deceased continued duties as a police officer, but again returned to Dr. T.E.V. in July with recurring complaints. Examination revealed mid-epigastric tenderness with increased pain on palpation. In August,

deceased complained of pain upon taking medication, and earlier vomiting of red blood, which indicated hemorrhage. Deceased was hospitalized August 25th for treatment by controlled bed rest, diet and medication, and discharged after five days as improved. On each occasion seen, the physician was impressed by deceased's evident anxiety and apprehensiveness, which the doctor believed resulted from stress of employment. The matter of quitting police work was discussed with claimant and deceased, and the physician advised deceased should seek other employment. However, deceased continued to declare his liking for, and disinclination to quit this work.

Deceased next was seen October 17, 1972, concerning complaints of mid-epigastric distress and hemorrhage. In view of deceased's failure to respond to medical management, and because continued hemorrhaging endangered life, the physician believed surgery was required and ordered hospitalization. On October 25, 1972, a routine stomach resection was performed.

Hospital records showed deceased tolerated surgery well, and experienced satisfactory post-operative course without difficulty. When last seen by Dr. T.E.V., the afternoon of October 26th, deceased was sitting up on the bed without complaints, and examination evidenced satisfactory condition without need for sedation. The records showed deceased was asleep at 4:00 A.M. on October 27th, but shortly thereafter was found not to be breathing. Cardiac resuscitation was unsuccessful and deceased was pronounced dead at 5:00 A. M.

Post mortem examination presented complete anatomical diagnosis covering post-operative status during two days following surgery. This showed extensive bilateral atelectasis in lower lobes of lungs. Death had been induced by aspiration of gastric contents into trachobronchial tree, causing respiratory arrest. Death was attributable directly to ulcer condition.

By deposition testimony the physician, Dr. T.E.V., stated deceased's medical prob-lem had been aggravated by work habits connected with performance of duties, which contributed to intractability of ulcer disease. Tension and stress involved in work habits were not compatible with medical management of an ulcer lesion. Deseased was a hard working, overly conscientious person, who was subjected to stress and anxieties which had a deleterious physical effect. Deceased did not want to quit his job, but his attitude and over-conscientiousness contributed to the anxieties which caused progressive worsening of his condition. Stress and anxiety contributed to intractability of deceased's condition, indirectly caused hemorrhaging, and necessitated surgery in an effort to cure the problem causing death.

Respondent introduced a letter report of Dr. M., presumably rendered in response to a hypothetical question, stating death resulted from surgical complication of therapy for peptic ulcer disease. Although acknowledging a peptic ulcer will heal, the doctor's opinion was deceased should not have been certified free of disease. The doctor did not consider whether deceased's work caused the ulcer, but whether the disease was work aggravated. Admittedly many factors, including stress, adversely affect the disease. A majority of cases are aggravated by combination of a multiplicity of factors. Without more extensive information, concerning amount of stress associated with deceased's work habits and personal life, the physician was unable to assess the relative contribution of multiple factors which aggravated the disease, but considered it impossible to blame any particular factor.

■ Comparison of the medical evidence reflects the unrebutted medical evidence established the disease was causally related to employment. This evidence clearly demonstrated a connection between the disease, induced or aggravated by apprehension and emotional stress and strain involved in the work performed, and death. It is not significant deceased's disease eventually might have caused debility, or

that predisposition to the disease contributed thereto. Disability is compensable when pre-existing dormant physical condition, or predisposition, is precipitated by injury. Brooks v. McConnell, Inc. v. Strong, Okl., 396 P.2d 525 (1964); National Zinc Company v. Cichon, Okl., 364 P.2d 699 (1961).

Respondent insists the evidence merely showed deceased suffered mental or emotional stress and strain for an undetermined period, attributable to a multitude of causes, and that deceased had an ulcer which progressed to the point surgery was required. However, respondent says this evidence cannot support a finding of accidental injuury, because evidence sufficient to establish mental or emotional stress and strain as an accidental injury as a matter of law, must be measured by decisions in Ada Coca-Cola Bottling Co. v. State Industrial Commission, Okl., 341 P.2d 568 (1959); Ada Coca-Cola Bottling Co. v. Snead, Okl., 364 P.2d 696 (1961); In Re Loague, Okl., 450 P.2d 492 (1969).

Each cited decision involved physical injury, and subsequent disability or death, allegedly resulting from worry as an outgrowth of inability to work. Compensation was denied in each instance on the ground aggravation of injury from "worry" over inability to work was too remote to provide causal relationship, since worry was not a risk reasonably incident to employment. In each of these cases we noted failure of evidence to support causal relationship, as well as insufficiency of medical evidence.

The opposite result has been reached in several cases involving post traumatic neurosis following accidental injury. See Rialto Lead & Zinc Co. v. State Industrial Commission, 112 Okl. 101, 240 P. 96 (1925), 44 A.L.R. 494; Seismograph Service Corp. v. Cosby, Okl., 317 P.2d 215 (1957); Woodward & Co. v. State Industrial Commission, Okl., 349 P.2d 638 (1960); Wade Lahar Const. Co. v. Howell, Okl., 376 P.2d 221 (1962); L. E. Jones Drilling Co. v. Harris, Okl., 403 P.2d 497 (1965). Each of these decisions disclosed sufficient medical evidence to sustain finding as to cau-

sation, and there was no issue concerning remoteness of the disability from initial injury.

The real basis of respondent's argument involves an effort to equate "worry" as used in Snead and Loague cases, supra, in the same context as emotional and mental stress and strain, indisputably shown as the medical basis of deceased's debility. By this means respondent insists the evidence did not show episodes of exertion or trauma and, on this basis concludes there was failure of competent evidence to show an accidental injury within meaning of the Act.

■  This appears to be an over-simplification of the issue. The stress and strain deceased suffered was not created by "worry" over inability to work. The emotional stress was engendered by the working conditions and nature of the employment. In Bill Gover Ford Co. v. Roniger, Okl., 426 P.2d 701 (1967), we held that physical and mental strain could result in accidental injury within meaning of the Act. This result was predicated upon the generally recognized principle, that disability caused by emotional stress, and strain, or anxiety is compensable. Also see Monahan v. Seeds & Durham, Pa., 134 Pa.Super. 469, 3 A.2d 998; Lobman v. Bernhard Altmann Corp., 19 A.D.2d 931, 244 N.Y.S. 2d 425; Fink v. City of Paterson, 44 N.J. Super. 129, 129 A.2d 746, discussed in Roniger, supra. We do not consider as valid respondent's attempt to distinguish these cases as inapplicable, because of factual differences based upon time. The Monahan case contains the following:

"The novel feature of this case is that the overexertion relied upon was more mental than muscular. We see no reason for holding that the over-exertion which may make an injury or death resulting therefrom conpensable must be solely physical in character. Authoritative definitions of 'exertion' do not confine its use to muscular effort. As defined in Funk and Wagnall's Standard Dictionary, quoted in the first opinion of

the board, it is 'the act of putting some power or faculty into vigorous action; a strong effort.' The Oxford English Dictionary defines it as 'the action or habit of exerting or putting into active operation an organ, the faculties, or habit of the body or mind.' As expressed by the court below, there is no fundamental difference in law or principle between an injury or death caused by the cutting or crushing of a blood vessel in the brain through the application of external violence and the breaking of one through increased internal pressure due to the putting forth of an unusual or abnormal mental effort."

■ This statement is apropos of the present cause. Deceased died following surgery for correction of an ulcer. Surgery was required because deceased developed ulcer disease during course of his employment. This employment involved inherent danger creating constant anxiety and apprehensiveness, which resulted in emotional stress and strain. Uncontroverted medical evidence established deceased's ulcer disease was provoked by this constant stress, and comes within this court's definition of accidental injury. Public Service Co. v. Gillespie, Okl., 321 P.2d 414 (1958).

Stressful nature of a police officer's work cannot be denied. Occurrence of emotional and mental strain are a constant of the job, and are reasonably incident to the employment. Consideration of all the circumstances makes apparent to a rational mind that causal connection exists between conditions under which deceased's work was performed and resulting injury. Our decisions, including the styled cases of Roniger, supra, and Flint Construction Co. v. Downum, Okl., 444 P.2d 200 (1968), recognize a heart attack which results from emotional and mental stress and strain as an accidental injury within meaning of the Act. No reason is suggested, and none appears, why injury to another organ, i. e. stomach, caused by mental or emotional stress and strain should not be compensable, where cause and effect are established by competent medical evidence.

■ State Industrial Court has the power and duty to weigh the evidence and pass upon credibility of witnesses. Cassidy v. Harding, Okl., 451 P.2d 698 (1969). State Industrial Court finding as to cause of death is conclusive and binding on review where supported by any competent evidence. Viersen & Cochran Drilling Co., v. Ford, Okl., 425 P.2d 965 (1967). We hold deceased suffered accidental personal injury, resulting in death, within meaning and intent of the Act. The State Industrial Court was correct in so finding.

Award sustained.

WILLIAMS, C. J., and DAVISON, BARNES, SIMMS and DOOLIN, JJ., concur.

HODGES, V. C. J., and IRWIN and BERRY, JJ., dissent.

HODGES, Vice Chief Justice (dissenting).

Injuries caused by emotional stress, worry or anxiety, which are not related to an accidental injury, are not compensable under the Workman's Compensation Act. The Act provides compensation for an accidental injury only.

In the present case the evidence shows the duodenal peptic ulcer of the decedent was caused by emotional tension. Traumas caused by emotional outlets, are not accidental injuries within the purview of the Workman's Compensation Act. This court has never held that emotional diseases by themselves are compensable, unless it was preceded by a causal accidental injury.

The legislature has provided coverage for specific occupational diseases. 85 O.S. § 3. The fact that an ulcer is not listed as an occupational disease lends support to the proposition that no coverage was intended.

I respectfully dissent.

I am authorized to state that Justice BERRY concurs in the views herein expressed.