**TEXAS–OKLAHOMA EXPRESS and Excalibur Insurance Company, Petitioners,**

**v.**

**Charles L. BEST, III and the State Industrial Court, Respondents.**

**No. 50361.**

Supreme Court of Oklahoma.

March 28, 1978.

---

Looney, Nichols, Johnson & Hayes by Robert D. Looney, Jr., Oklahoma City, for petitioners.

Mark D. Coldiron, Del City, for respondent.

DAVISON, Justice:

Claim for compensation alleged accidental injury January 8, 1975, during covered employment. A trial judge awarded compensation for permanent total disability resulting from accidental injury. Petitioners, hereafter respondents, perfected proceeding for direct review by Supreme Court. 85 O.S.1971 § 29.

Issues advanced on review present arguments which rest upon respondents' interpretation as to weight and quality of medical evidence to support this award. The first contention urges lack of competent medical evidence because the physicians' evidence was based upon incomplete and inaccurate history which did not take prior accident and history into account. The second contention insists claimant cannot recover compensation for disability resulting from unreasonable refusal to submit to surgery.

Medical evidence agreed claimant was suffering from varicose veins in both testicles. When this occurs along the testicular vein, the plexus of veins within the scrotum are tremendously engorged and dilated with blood, and the condition is diagnosed as varioceles. Claimant was suffering from bilateral variocele, as a result of which he was permanently disabled from performance of manual labor.

Claimant, with a history of childhood herniorrphapys, first was employed in 1968 after physical examination. In 1969, he resumed work for respondent after physical examination, and in 1973, suffered severe strain in region of right testicle while lifting heavy freight. Respondent's doctor treated claimant with penicillin injections. Respondent sent claimant to another physician who diagnosed condition as variocele, a term claimant had not heard, and prescribed wearing a support. A claim adjustor advised this condition was not work-related, but paid claimant a nominal sum and no claim for compensation was filed.

Claimant continued to have increasing problems, evidenced by pain and swelling, alleviated somewhat by resting and hot baths. About January 5, 1975, this condition was aggravated when claimant assisted in loading a boat onto a trailer, but responded to heat treatment and the next day claimant returned to work. On January 9, 1975, claimant was handling heavy freight on respondent's dock when stricken by severe pain and greater swelling which forced claimant to stop work. This was reported to the foreman who told claimant to go home. Having already been told his condition was not work-related, claimant did not request medical treatment.

Thereafter, claimant was seen by Dr. P., who diagnosed variocele of right testicle, prescribed continued wearing of support, and advised claimant to quit his job because no longer able to perform heavy labor. Dr. P. made written report of claimant's condition and physical disability to perform usual work, but later moved away.

On April 28, 1975, claimant was examined by Dr. D., who took history of injuries and problems from pain and swelling upon exertion. Examination disclosed variocele on right and less pronounced on left, and claimant was directed to continue wearing support and refrain from lifting or manual labor. Dr. D. assisted claimant in preparation of forms required for application to receive union health and accident benefits, and indicated problems were not work-related, but resulted from boat loading incident. Claimant continued to see Dr. D. as required during 26 weeks union benefits were paid. Application for insurance benefits was filed upon the foreman's suggestion, and at no time were any rights under workmen's compensation explained.

Deposition testimony of Dr. D. reflected history of injury in 1973, intermittent difficulties and claimant's eventual indisposition after January 9, 1975. While treating claimant conservatively, the doctor had advised claimant surgery was indicated if persistent pain continued, or if there was recurrence of inflammatory epididymitis which the doctor treated. Nature of surgery and attendant risks had been discussed as variocele could be progressive. Although a cure might be effected, there was possibility surgery could result in loss of a testicle.

Respondent introduced deposition of a specialist in urology (Dr. R.), who examined claimant twice, the last occasion being May 12, 1976. History included 1973 injury and earlier diagnosis of variocele with recommendation for wearing support. The doctor denied receiving history of injury from loading boat, or loading dock injury on January 9, 1975. However, when interrogated concerning effect of boat loading incident and injury of January 9, 1975, the doctor stated these were factors in aggravating the variocele. Any trauma to testicles, strenuous activity, or prolonged standing could have aggravated the condition. From claimant's history, the doctor's opinion was this condition could have been aggravated by hernia repair, various injuries described, or prolonged standing, but no opinion could be given as to one specific cause.

Extensive testimony concerned surgical procedures, amount of risk involved, and prognosis for complete recovery. One procedure would be simple litigation of testicular vein, which could be performed if it was determined variocele had not been caused by prior hernia repair. In this procedure which causes blood to be centered into collateral type circulation, there is virtually no reason to damage the testicle or testicular artery, and is a much safer operation, successful in 95% of cases.

In the event surgical exploration revealed obstruction of the inguinal canal, a second procedure (variocolestomy) to actually remove the entire variocele would be performed. The risk in this procedure is greater even in the best expert's hands, and a small possibility of testicular atrophy existed. Claimant already was suffering from slight atrophy of testicles, and conceivably could lose a testicle inadvertently, although this is very rare in hands of a qualified surgeon.

The claimed insufficiency of medical evidence concerns claimant's failure to relate difficulties following boat loading incident

to Dr. D., together with failure to advise Dr. R. of that incident, or work related injury on January 9, 1975. This argument is advanced upon authority of decision in *Acme Flour Mills v. Bray,* 185 Okl. 516, 94 P.2d 828; *Western Good Roads Service Co. v. Coombes,* 185 Okl. 599, 95 P.2d 633; and *Snow v. Kinta Stripping Company,* Okl., 372 P.2d 34 (1962). The general expression of these decisions declares a physician's opinion must be predicated upon facts substantially in the nature of evidence disclosed on hearing.

 Asserted lack of probative medical evidence, because of insufficient history measured by requirements of the cited cases, lacks substantial merit. These decisions have been distinguished so often, extended discussion is not required. The underlying basis for conclusion reached in those decisions was fatal variance between history assumed by the expert witness and undisputed facts the injury disclosed by the proof. History which incorporates substantially the facts a party's proof fairly tends to establish and which are consistent therewith, is sufficient. Because one expert assumes less comprehensive facts than assumed by an adversary does not, within itself, destroy probative value of expert opinion. *Black, Sivalls & Bryson, Inc. v. Story,* Okl., 378 P.2d 764 (1963); *Brooks & McConnell, Inc. v. Strong,* Okl., 396 P.2d 525 (1964).

 We consider of importance the fact that, although a respondent's expert denied knowledge of any injury to claimant except in 1973, diagnosis based upon examination remained unchanged after counsel directed attention to prior incidents. Nothing in testimony of Dr. R. indicated diagnosis, cause of injury, or evaluation as to degree of disability would have been changed by history which included recitation of those events. *Brooks & McConnell v. Strong,* supra, and cases cited.

Respondents also contend claimant's refusal of surgery was unreasonable and compensation cannot be awarded for disability which results from refusal.

The argument is that the only competent evidence given by Dr. R., showed risk from necessary surgical procedures practically nonexistent, and probability of success very high. That claimant's refusal to undergo operation was unreasonable as a matter of law, there being no evidence of risk to life of any degree. Basis for this argument is a text rule, stating where risk is insubstantial and probability of cure high, refusal of surgery should result in termination of benefits. 1A Larson's Workmen's Compensation Law, § 31.22; *Chicago Bridge & Iron Works v. Sabin,* 105 Okl. 62, 231 P. 851, and similar cases.

 The controlling rule declares the employer assumes a burden of establishing proposed surgery is a minor procedure, safe, simple, and reasonably certain to alleviate the condition, in order to provide basis for determining whether refusal of proffered surgery is unreasonable. *Moran v. Oklahoma Engineering & Machine & Boiler Co.,* 89 Okl. 185, 214 P. 913; *E. L. Mendenhall Company v. Kell,* Okl., 359 P.2d 234 (1961), and cases cited. Decision in the *Kell* case also makes clear the issue as to unreasonableness is a question solely for State Industrial Court determination. Evidence from which adjudication was made failed to show this was minor procedure, but affirmatively disclosed a recognized percentage of risk which could result in testicular atrophy.

In *Henley v. Oklahoma Union Ry. Co.,* 81 Okl. 224, 197 P. 488, 18 A.L.R. 427 (1921), this Court adopted the general rule that no workman should be compelled to risk death, *however slight,* to minimize the pecuniary burden placed upon the employer by law. That decision quoted *McNamara v. Metropolitan Street Ry. Co.,* 133 Mo.App. 645, 114 S.W. 50:

"We do not think plaintiff should be criticized and punished on account of his failure to undergo a surgical operation. He should be accorded the right to choose between suffering from the disease all his life or taking the risk of an unsuccessful outcome of a serious surgical operation. Certainly, defendant, whose negligence produced the unfortunate condition, is in

no position to compel plaintiff again to risk his life in order that the damages may be lessened. To give heed to such contention would be to carry to an absurd extreme the rule which requires a person damaged by the wrong of another to do all that reasonably may be done to minimize his damages."

This rule is not limited by decision in *Walter Nashert and Sons v. McCann,* Okl., 460 P.2d 941 (1969). That case involved refusal to accept surgery because of religious beliefs, and cannot be considered analogous to the cause reviewed.

AWARD SUSTAINED.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS, BERRY, SIMMS and DOOLIN, JJ., concur.