**Wallace BURNS, Petitioner,**

*v.*

**YUBA HEAT TRANSFER CORPORATION, American Motorists, Insurance Carrier, and Workers' Compensation Court, Respondents.**

**No. 53732.**

Court of Appeals of Oklahoma, Division No. 2.

July 22, 1980.

Released for Publication by Order of Court of Appeals Aug. 22, 1980.

Jack D. Crews, Ash & Crews, Tulsa, for petitioner.

Edward E. Davies, Jr., Whitten, McDaniel, Osmond, Goree & Davies, Tulsa, for respondents.

BRIGHTMIRE, Presiding Judge.

Wallace Eugene Burns' claim for workers' compensation was rejected after the trial court found that he had not "sustain[ed] an accidental personal injury arising out of or in the course of [his] employment" with respondent, Yuba Heat Transfer Corporation. On appeal to the court *en banc* the trial court's order was affirmed and Burns appeals.

### I

The 61-year-old claimant worked for Yuba for 17 years. For 13 of those years he was a machine line foreman and was able to perform his supervisory duties free from health problems.

Around the end of July or middle of August 1978, however, Burns began to ex-

perience daily pains in his stomach and a light tingling sensation that originated in the left side of his face and moved down the left side of his body. According to the claimant, the onset of these physical problems occurred shortly after a new night superintendent was placed over him. Claimant said the new boss instituted some innovative procedures aimed at increasing the productivity of the men under Burns.

One of the new requirements had to do with the issuance of "pink slips"—written warnings to employees of a violation of company rules that could result in discharge. While he had issued pink slips in the past, Burns said the new superintendent was after him to issue more of the slips and to be tougher on the workers under him. Burns suspected the superintendent went out of his way to watch Burns' workers and if he found them talking he would instruct claimant to issue a pink slip. Burns' suspicions seemed to be justified when, upon checking the file where copies of the slips were kept, he discovered that the day foreman had issued no slips within the past year, while he had issued several.

Also, the superintendent had instructed Burns to institute a new procedure to check the daily production of machines used in his department and, thus, to check the production of Burns' workers. This additional duty, said Burns, was time consuming and evoked complaints from his workers. Burns was led to believe that the procedure was undertaken as part of a study on ways to increase production, but the day operators told him they were not conducting a similar study. Finally, Burns learned that the foreman of an adjoining department, a long-time employee of Yuba, had been fired by the superintendent.

Burns said these events induced considerable apprehension, stress and anxiety which, as time went by, grew more severe precipitating both gastrointestinal as well as neurological disorders. Finally, on September 15, 1978—the last day he worked for Yuba—Burns went to see David James, D.O. He hospitalized Burns and, after conducting an endoscopic examination of the stomach area, reached a final diagnosis of an "acute duodenal ulcer—benign." Having received the history that Burns had gone to a physician in the early 1950's complaining of a "nervous stomach," James opined that Burns' ulcer was caused by the stress and anxiety he experienced at work when faced with the requirement of increasing production and the possibility of termination. For a neurological evaluation Burns was referred to John DeWitt, a D.O. neurologist. DeWitt could find no clear-cut evidence of an organic cause for Burns' neurological problem, and he stated his belief that the condition was "functional and related to chronic anxiety." Burns then filed his claim stating that his ulcer and neurological disorders were injuries accidentally arising out of and in the course of his employment.

Yuba and its insurance carrier took issue with Burns' allegation that he sustained an accidental job-related injury, and contended that if there was an injury his failure to notify them within 30 days after sustaining it was prejudicial. Respondents submitted the medical report of Roy Fielding, M.D., who had examined Burns and reportedly found "a definite grade 2 high-pitched, squeaking-type cystolic bruit heard over the right common and internal carotid arteries," a sign that the right carotid was partially obstructed. In his opinion, this organic defect could have been the cause of Burns' neurological problem—a cause unrelated to his work situation. Fielding, however, had no opinion as to the cause of Burns' ulcer, but he did state that if the work anxieties and tensions as described by Burns existed, they could have exacerbated a preexisting ulcer condition.

II

Essentially, Burns' argument on appeal is that the compensation court erred as a matter of law in finding that he had not sustained an accidental job-related injury because there was no competent evidence upon which to base that order. Or, to put it another way, the evidence required the court to find he had sustained such an inju-

ry and to award him temporary total disability compensation.

With reference to the neurological problem, the medical evidence was conflicting as to its cause. As we said, respondents' physician, an internal medicine specialist, was of the opinion that the tingling experienced by Burns had an organic etiology and was not job-related.

Claimant's neurologist, on the other hand, said Burns "has no bruits of the head, neck or skull" and found no "clear-cut evidence" of an organic basis for Burns' symptoms. It was his opinion that the patient's neurological problems were functional and arose from chronic anxiety.

■ The compensation court was evidently persuaded by the findings of respondents' doctor and resolved the issue against claimant. The judge, as a fact finder, was free to accept the testimony of one expert and reject, in whole or in part, that of the other. *Department of Public Safety v. Jones*, Okl., 578 P.2d 1197, 1199 (1978). The factual determination of the neurological causation issue, based as it was on a conflict of competent medical testimony, was within the scope of the trial judge's legal authority and is correct.

■ The same thing is not true as to the ulcer problem, however. We think the evidence requires a finding that Burns either developed an ulcer as a result of his employment experiences, or at least harbored a physical condition that was exacerbated by the employer's conduct. There was no contradiction of his testimony that he was under increased anxiety and stress because of the new superintendent's sudden invocation of job-threatening scrutiny of and production-check demands on Burns and his workers. The stress intensified when a veteran foreman in an adjoining department was fired by the new superintendent for reasons unclear to Burns.

Respondents concede this testimony is uncontradicted but they argue it is not worthy of belief because Burns admitted that when

Yuba's Personnel Director visited him in the hospital the official was not told of the stress and anxiety wrought by the new superintendent. This appraisal seems strained and petty. It is not likely that an employee would express his appreciation for a brief social visit by a company official by undertaking a critique of company policy or launching into a condemnation of his superintendent. Furthermore, it is difficult to see how Burns' failure to complain to the official could in any event be construed as rendering untrue or even improbable Burns' testimony as to the conditions and pressures existing at work over a period of weeks.

Nor can we agree with respondents' suggestion that another part of Burns' testimony was impeached by his response to a deposition question when he was asked whether he was having "problems" with his superintendent and Burns answered "Not exactly problems." The lack of merit in this contention becomes apparent when it is considered that Burns testified at length about the unrest and hostility generated by the new superintendent's unsettling innovations. These did indeed create problems for Burns though he himself may not have had a problem with the superintendent personally. We find no significant contradictions in Burns' testimony; we do not find its substance to be inherently improbable, and therefore it cannot be ignored.

■ Not only did the evidence establish job-related stress but it causally connected the ulcer to such stress. This was a proper foundation for compensation. *Oklahoma City v. Schoonover*, Okl., 535 P.2d 688 (1975). James testified that in his opinion, based upon the medical and social history of his patient, Burns' ulcer was caused by the emotionally stressful conditions existing in his employment. Respondents' doctor did not contradict James' testimony, and, in fact, he could form no opinion as to the cause of Burns' ulcer. Moreover, respondents' physician agreed with James that the working conditions as described by Burns could cause an ulcer or cause aggravation of a preexisting ulcer condition.[1]

1. For purposes of compensation, it is immaterial whether the job-related stress caused the ulcer or caused an aggravation of a preexisting physical condition or predisposition to ulcers.

■ Whether or not Burns sustained an accidental injury in the course of his employment is a jurisdictional fact and the finding of the Workers' Compensation Court is not binding on us. *Osmus v. City of Oklahoma City*, Okl., 568 P.2d 1259 (1977). Of course, the nature and extent of an injury are factual matters which when found by the trier of the facts will remain undisturbed if competent evidence underlies them. *Haynes v. Pryor High School*, Okl., 566 P.2d 852 (1976).

The order of the Workers' Compensation Court is reversed and the cause is remanded with directions to determine the nature and extent of claimant's disability.

BACON and NEPTUNE, JJ., concur.

This was the effect of *Schoonover* where the court upheld a claim for death benefits even though the evidence clearly revealed that the deceased, a police officer, had a history of peptic ulcer before he became a police officer and several years before he underwent corrective surgery for a peptic ulcer condition. 535 P.2d at 690–91. The predicate for compensation is the establishment of a job-related cause and effect of a present injury. *Id.* at 692.