In the Matter of the Death of Guy H. BARKLEY.

CITY OF ALVA and The State Insurance Fund, Petitioners,

v.

Lucy P. BARKLEY, Widow, Respondent.

No. 37703.

Supreme Court of Oklahoma.

March 18, 1958.

Mont R. Powell, Mary Elizabeth Cox, Oklahoma City, for petitioners.

Mauntel & Doolin, Alva, Looney, Watts, Looney & Nichols, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondent.

BLACKBIRD, Justice.

On the 28th day of April, 1956, Guy H. Barkley died while in the employ of petitioner, City of Alva. He had been employed as construction foreman of the City Water Department, and, while working in connection with that department, he contracted lead poisoning and thereafter developed myeloma and died as a result of the lead poisoning and myeloma.

On May 31, 1956, Lucy P. Barkley, surviving widow and only dependent heir of

the deceased, filed a claim for compensation against the City of Alva and the State Insurance Fund, insurance carrier, under the Death Benefit Provisions of the Workmen's Compensation Law in which she alleged the above state of facts. The trial commissioner found that Barkley "contracted lead poisoning, arising out of and in the course of hazardous employment, with the above named respondent" (petitioner herein) "which manifested itself about February 21, 1955." He also found:

"That as a result of said lead poisoning, the life span of deceased was shortened and his death hastened by a period of from 4 to 8 years, due to the fact that said lead poisoning, if not the cause of multiple myeloma, which caused deceased's death, aggravated, accelerated, contributed to, and precipitated his death, which occurred on April 28, 1956."

He further found, that claimant, respondent herein, was the surviving widow of deceased and his sole dependent heir, and, upon the foregoing findings, entered an award in her favor in the sum of $13,500. Said award was sustained on appeal to the Commission en banc.

Petitioner and State Insurance Fund bring the case here for review and contend the award is not supported by the evidence and is contrary to law.

It is argued that the evidence shows deceased did not die from lead poisoning but from myeloma, an intervening agency having no connection with, or relation to, the lead poisoning, which is said to constitute an occupational disease.

The evidence shows the following facts: Deceased was first employed by petitioner some time in 1941, and, with the exception of a few intervals, continued in its employment until November 1, 1955. He was engaged as construction foreman of the City Water Department. His duties required him to work around lead fumes and vapors which caused him to inhale such fumes and vapors. His duties consisted of leading the pipe joints of the city water main lines, which necessitated his entry into a trench or ditch in which the water main was laid, and to ladle hot lead, which placed him in contact with deadly lead fumes and vapors, without proper ventilation. After months of this kind of work, deceased commenced to feel ill, and, in February, 1955, he consulted Dr. T of Alva, Oklahoma, but continued to work until November 1, 1955. Dr. T continued to treat deceased from the date he was first consulted until April 28, 1956, the date of deceased's death.

Petitioner paid deceased temporary total compensation from November 1, 1955, to the date of his death and paid his medical, doctor and hospital bills.

In his written report of July 23, 1956, Dr. T stated he first saw and examined deceased on February 21, 1955. He obtained a history from deceased substantially as above set forth. His examination disclosed that deceased was at that time suffering from anemia apparently due to lead poisoning. The doctor then referred him to Dr. J of Oklahoma City, who examined him and confirmed the diagnosis made, and recommended blood transfusions. Numerous blood transfusions were thereafter given. Dr. J again examined deceased on September 12, 1955, at which time he found evidence of multiple myeloma. Dr. T, under the above state of facts, reached the following conclusion:

"It is my firm conviction that the chronic lead poisoning, while perhaps a secondary cause of death, was a definite contributing factor in the rapid termination of this man's life. He had two separate conditions—lead poisoning and multiple myeloma. The cause of myeloma has not been determined, but it did manifest itself following the lead poisoning. The usual life expectancy for a patient with multiple myeloma is approximately four to eight years (without treatment). Since this man lived only about seven months following the diagnosis of multiple myeloma and received all accepted treatment, it is my opinion, that the lead poisoning was a

definite contributing factor in his rapid termination."

Dr. T's deposition was thereafter taken and offered in evidence. In the deposition, he testified substantially as stated in his written report, with no addition of material facts.

Dr. J testified that he first saw and examined deceased on May 13, 1955. He found him suffering from anemia and found certain signs of lead poisoning. He again examined deceased on September 7, 1955, and found he had developed multiple myeloma. According to his testimony, he, at that time, found no trace of lead poisoning but anemia was still there and existed in a greater degree than would have existed had deceased been suffering from myeloma alone; and he did not know the cause of myeloma. He further testified that the lead poisoning was not the sole cause of his death but was an aggravating cause.

This, in substance, constitutes the evidence in the case. Petitioner and State Insurance Fund contend that it is insufficient to support the finding and award of the Commission.

 It is contended that there is no evidence tending to show that deceased died of lead poisoning as alleged in the complaint; that death was caused by myeloma which deceased contracted after he had been completely cured of lead poisoning. While the evidence discloses that the lead poisoning may not have been the sole cause of deceased's death, it does show that it was a definite contributing factor which caused the early termination of deceased's life. We think the evidence sufficient to sustain the award.

Under the evidence in this case, the disease contracted by deceased, while in the employ of petitioner, may be properly classed as an occupational disease. Lead poisoning contracted under the circumstances above stated constitutes an occupational disease, and disability due to such disease is compensable under our present Workmen's Compensation Law. See the recent amendments thereto, Tit. 85 O.S.

1953 and 1955 Supp. Sec. 3, subsections (7) and (16).

The Commission, under the evidence, awarded compensation to respondent in the sum of $13,500 under the Death Benefit provision of the Workmen's Compensation Law. We cannot say that there is no competent evidence reasonably tending to sustain the award. It will therefore not be disturbed on review.

We have examined the authorities cited and relied on by petitioner and the State Insurance Fund. These cases do not hold contrary to the conclusion here reached.

Award sustained.