B. C. MARLAR and United States Fidelity and Guaranty Company, Petitioners,

v.

Warner B. MARLAR and State Industrial Court of the State of Oklahoma, Respondents.

No. 38871.

Supreme Court of Oklahoma.

May 3, 1960.

Rehearing Denied June 14, 1960.

Rhodes, Crowe, Hieronymus & Holloway, and Philip N. Landa, Tulsa, for petitioners.

H. Tom Kight, Jr., Claremore, B. E. Bill Harkey and Don Anderson, Oklahoma City, for respondent, Warner B. Marlar.

Mac Q. Williamson, Atty. Gen., Richard M. Huff, Asst. Atty. Gen., for respondent, State Industrial Court.

JACKSON, Justice.

Warner B. Marlar, claimant, was awarded compensation against his employer, B. C. Marlar and the latter's insurance carrier, United States Fidelity & Guaranty Company (hereinafter referred to collectively as respondent), for total permanent disability arising out of an accidental injury sustained in the scope of his employment on May 9, 1957, which resulted in an aggravation of pre-existing kidney disease. Respondent brings this action to obtain a review.

Claimant testified that while attempting to increase tension on the track of a diesel-propelled excavator shovel by using a large "long-handled" wrench to tighten one of the bolts, the wrench slipped off the screw nut, and claimant fell across the track, striking the "low-back area" of his body. He experienced immediate pain and later noticed blood in his urine. The following morning he reported to his family physician, Dr. J., who suggested that a specialist be consulted. On recommendation of Dr. F., a urologist, claimant was hospitalized on May 11, 1957. It was there determined that a blood clot was blocking the flow of urine from his right kidney. Further tests revealed claimant suffered from a bilateral polycystic renal disease which antedated the accident. This condition manifests itself by a multitude of clear fluid bearing cysts forming upon the kidney. As the growths become larger the functional substance of that body organ is gradually displaced. The occlusion of the urinary tract was apparently caused by a rupture of one of the cysts with resulting hematuria (discharge of blood in urine). After bleeding was arrested, claimant left the hospital on May 22, 1957.

Prior to the accident the kidney disease was in a dormant stage, and its existence was unknown to claimant. The condition is hereditary and possibly congenital. Medical science has no known cure for it.

Respondent contends that there is an entire absence of evidence to support the finding of the State Industrial Court that claimant's permanent total disability was the result of an accidental injury sustained in the course of and arising out of his employment.

Reports of three physicians were admitted in evidence. One of them, Dr. J., testified by deposition. He related in substance that claimant's injury on May 9 brought about a "very hazardous acute hemorrhage from the kidney". The presence of an underlying congenital disease of that body organ was discovered. This ailment had not been evident prior to that time. Before the accident, the physician explained, claimant had "engaged in unlimited activity without any symptoms" and until then he was "perfectly well". Following the injury he will not be able to perform "any ordinary manual labor" or any other "strenuous activity because of the likelihood of bringing about another gross hemorrhage." As a result of the accident the pre-existing dormant kidney disease was aggravated and "lighted up". The condition rendered claimant permanently totally disabled.

Dr. F. in his report states claimant sustained an injury aggravating the kidney disease which antedated the accident. Claimant was "instructed not to return to heavy work of any kind, and to do no lifting or straining of any kind in the future". The resulting permanent total disability, the report explains, is not attributable to accidental injury but to the congenital kidney ailment which has since regressed to its previous condition.

The report of Dr. B. relates in substance that on cessation of hematuria, following the aggravation suffered in the accident, claimant's condition "reverted" to the same "level" as that before the injury. The physician further explained that although on re-examination of claimant in March 1959, he found the disease had "probably" advanced beyond its stage in May of 1957, "this should not be attributed" to the accidental injury.

The only "positive" medical evidence in the record, respondent argues, is that of Drs. F. and B., which tended to show that claimant's disability was occasioned by the kidney disease alone. Commenting on the testimony of Dr. J., respondent points out that the physician conceded in his deposition that with the arrest of hematuria, claimant's physical condition had regressed to the same stage of development which preceded the accident. Moreover, the argument follows, Dr. J. was unable to either precisely determine any permanent organic changes in claimant's condition brought about by the accident or to accurately fix the degree to which the kidney disease was accelerated by the injury on May 9. Hence, respondent concludes, the resulting permanent total disability should be ascribed to the pre-existing disease alone, and the award of the tribunal below lacks support in the evidence. We cannot accede to this view.

■ The Workmen's Compensation Law, 85 O.S.1951 § 1 et seq., does not undertake to apportion the degree or extent by which claimant's illness is augmented or hastened by the injury superimposed upon it. Rather, where it is shown that a latent or dormant disease, unknown to the workman, is aggravated, accelerated or brought to life by an accidental injury, the entire disability arising from the cumulative effect of injury and illness, interacting upon each other and operating together, furnishes the proper basis for compensation. United States Gypsum Co. v. State Industrial Commission, Okl., 307 P.2d 135;

National Zinc Co. v. Seabolt, Okl., 282 P. 2d 745; Standard Roofing & Material Co. v. Ross, Okl., 279 P.2d 947; Jones Oil Co. v. Cole, Okl., 296 P.2d 155; Oklahoma Natural Gas Co. v. White, 187 Okl. 627, 105 P.2d 225.

■ In National Zinc Co. v. Seabolt, supra, the rule is stated in paragraph one of the syllabus, as follows [282 P.2d 745.]:

"An accidental injury, sustained by a workman engaged in a hazardous occupation within the Workmen's Compensation Act, which aggravates or produces activity of a latent or dormant disease, thus creating a disability which did not previously exist, is compensable."

It was not necessary for the trial judge to separately trace and evaluate each cause which contributed to produce the ultimate disability. Nor need the disability be attributable in any appreciable part to the injury, standing alone. It is the *aggravation* of the disease by the injury which renders the entire disability resulting therefrom compensable. Deep Rock Oil Corp. v. Betchan, 169 Okl. 42, 35 P.2d 905, 102 A.L.R. 786; Fairmont Creamery v. Lowe, 160 Okl. 32, 15 P.2d 133.

It is undisputed that the kidney ailment was in a dormant condition and had not progressed to an advanced and disabling stage of development before the accident occurred. There is ample competent medical evidence to support the finding that the accidental injury aggravated and precipitated the pre-existing disease, by reason of which claimant became totally and permanently disabled.

■■ The cause and extent of disability resulting from an accidental injury are questions of fact and if there is competent evidence reasonably tending to sustain the finding of the State Industrial Court, an award based thereon will not be disturbed on review. Jones Oil Co. v. Cole, Okl., 296 P.2d 155.

Award sustained.