NATIONAL ZINC COMPANY, et al.,
Petitioners,

v.

Clive Ira HAINLINE et al., Respondents.

No. 39009.

Supreme Court of Oklahoma.

Jan. 10, 1961.

Rehearing Denied Feb. 7, 1961.

Application for Leave to File Second Petition for Rehearing Denied March 21, 1961.

Covington & Gibbon, Tulsa, for petitioners.

Howard C. Triggs, Oklahoma City, and Mac Q. Williamson, Atty. Gen., for respondents.

BERRY, Justice.

The present proceeding was instituted under the provisions of the Occupational Disease Amendment to the Workmen's Compensation Act, 85 O.S.Supp., 1959, Sec. 3, Sub-divisions 7 and 16.

Claimant is a laborer, 55 years of age, who from April, 1936, until some ten months prior to his discharge, worked in close proximity to zinc-processing equipment at petitioner's smelter in Bartlesville, Oklahoma. When increasing weakness prevented him from performing regular duties in the production department, he was assigned, in March, 1957, to lighter work in the bathhouse of the plant where he acted as a janitor. No longer able to continue in any capacity, he left petitioner's employment on February 16, 1958.

Claimant is presently afflicted with a disease of pulmonary emphysema, the etiology of which is admittedly unrelated to his employment. It consists in distention of air cells and loss of elasticity in lung tissue. The condition is termed "insidious in its onset" and progressive in its development. Although claimant had experienced some difficulty in breathing since 1955, the affliction was not positively diagnosed until early in 1958. Compensation was sought on the theory that claimant's exposure to fumes, smoke and dust containing some of the toxic substances enumerated under the occupational disease statute, 85 O.S.Supp., 1959, Sec. 3, Sub-division 16, irritated, aggravated and accelerated the course of his

emphysema. It is undisputed that claimant is unable to perform any manual labor. The contested issue below related to the cause of his disability.

Depositions of three physicians form a part of the record. Two of them testified for petitioner. Dr. B, an expert witness for claimant, related in unequivocal terms that the long and continuous infiltration of noxious dust, as well as toxic materials emanating from the processing and smelting operations precipitated an aggravation and acceleration of claimant's disease process. He emphasized the irritating quality of these substances, which, regardless of their toxic level, have an appreciably harmful effect on the course of emphysema.

Dr. A's testimony, elicited on behalf of petitioner, is in substantial accord with that of Dr. B. Another physician for petitioner, Dr. L, explained that mercury, zinc, lead and cadium do not harmfully affect human lungs as their toxic action operates on other parts of the body. He conceded, however, that certain "nuisance dusts" are present in the air around the plant premises which are composed of "fine particulate matter" and "droplets of dust and fumes". These substances, he related, while irritating to the lungs, do not cause "permanent irreversible damage to this organ", unless their suspension in the air exceeds the "threshold limit" of fifty million particles per cubic feet.

There is lay testimony in the record that claimant, while engaged in the production department of the plant, was working in close proximity to furnaces emanating fumes and smoke from the processing of zinc and some lead. An occupational health study was made of the smelter operations by the joint effort of federal and state authorities. The survey, completed in October, 1953, was introduced in evidence and indicates that, while exposure to zinc and other metals from fumes and smoke did not exceed the "threshold limits" (human tolerance level), the toxic metals were present everywhere in the dust in appreciable and measurable quantities.

The State Industrial Court entered an award for the claimant and petitioner seeks review.

It is contended that mere occupational aggravation of emphysema, a condition which in its inception was unrelated to claimant's employment, does not, under our statute, constitute "poisoning" from metals enumerated in 85 O.S.Supp., 1959, Sec. 3, Sub-division 16, and may not in and of itself be regarded as a "disease" within the meaning and purview of the Occupational Disease Amendment.

85 O.S.Supp., 1959, Sec. 3, Sub-division 16 provides in pertinent part:

"The following diseases shall be deemed to be occupational diseases: (a) Poisoning by * * * (16) Lead * * * (28) Zinc."

The terms of this enactment do not restrict its applicability to any specified pathology produced by exposure to the enumerated toxic substances. The provisions only designate the source from which harm must originate and declare that "poisoning" thereby shall constitute a compensable disease.

■ The term "poisoning" is not defined in the statute and has not heretofore been construed by this Court. As employed in lay parlance, as well as by medical writers, it denotes any morbid condition, local or general, produced by poison and is not limited in its use to cases where toxicity causes a systemic (general to the body) poisoning to the human organism. Watkins v. National Electric Products Corp., 3 Cir., 165 F.2d 980.

■ Since the Legislature did not see fit to restrict the scope of "poisoning" to any designated vocational pathology, and in keeping with the principle that the provisions of our Workmen's Compensation Act should be liberally construed, we are constrained to hold that "poisoning" within the meaning of the quoted statute, extends to any morbid condition produced by one of more of the enumerated toxic agents, which, either on inhalation, absorption, ingestion or contact, results in a harmful or

deadly effect on human organism, whether it be general or local. See Watkins v. National Electric Products Corp., supra, and the cases cited therein.

■ The occupational disease provisions of the Workmen's Compensation Law are clearly an integrated part of the entire Act and must be construed in the light of the same liberal principles as are applied in cases of injury or death from accidental causes. It is settled law in this jurisdiction that disability from an accidental injury which aggravates or accelerates a dormant disease is compensable, even though the physical condition of employee pre-disposes him to, or increases, the harm of a particular injury. We can perceive of no valid reason why a different rule should govern a situation, where, as in the instant case, the morbidity from compensable exposure to toxic substances as defined by statute, rather than an accident, augments or accelerates a disease upon which it is superimposed, so as to ultimately produce disability. In both instances the entire disability arising from the cumulative effect of a compensable harm combined with a non-occupational illness, interacting upon each other and operating together, furnishes the proper basis for an award. Marlar v. Marlar, Okl., 353 P.2d 17.

The provisions of the occupational disease statute of Kansas, which bear a marked resemblance to our own, were construed by the Supreme Court of that State in a similar manner. In Weimer v. Sauder Tank Company, 184 Kan. 422, 337 P.2d 672, it was held that an aggravation of emphysema traced to and precipitated by inhalation of toxic fumes from a metal enumerated in the Act constituted "poisoning" and an occupational disease within the meaning of the statute.

In the cited case, the Court, following a statute, limited compensation to that portion of the aggregate disability which, under the medical evidence adduced, was shown to be attributable to the aggravation from occupational exposure. The Workmen's Compensation Act of this State makes no provision for such apportionment and does not undertake to measure the degree by which a non-occupational infirmity is hastened or augmented by compensable aggravation superimposed upon it. Nease v. Hughes Stone Co. et al., 114 Okl. 170, 244 P. 778; Marlar v. Marlar, supra.

In City of Alva v. Barkley, Okl., 323 P. 2d 371, this Court held that death of a workman is compensable when it results from the combined effect of an illness unrelated to employment operating in conjunction with an occupational disease which acts as a contributory or accelerating cause.

■ In the cause at bar, we find competent medical evidence to show that claimant's emphysema was irritated, aggravated and accelerated by the harmful exposure to zinc fumes and noxious dusts containing toxic materials as defined by 85 O.S.Supp., 1957, Sec. 3, Sub-division 16. The trial tribunal did not err in finding that the occupational poisoning, when superimposed upon the lung condition, resulted in disability which is compensable under the statute.

Petitioner relies on decisions from other jurisdictions to support his theory that non-accidental aggravation of a disease process which in its inception is not attributable to employment is not compensable as an occupational disease. These authorities construe statutes with provisions dissimilar to ours. We note, however, that the principal authority from New Jersey cited by petitioner was reversed by the Appellate Division of the Superior Court of that State. See Giambattista v. Thomas A. Edison, Inc., 32 N.J.Super. 103, 107 A.2d 801. The holding in the cited case is in accord with our pronouncement in this cause.

In his second proposition, petitioner asserts that the claim was barred by statutory limitation because there is no evidence of a hazardous exposure after claimant was assigned to janitorial work at the bathhouse.

■■ It is correctly conceded that the limitation of time, as applied to occupa-

tional disease provisions, commences to run from the date of the last hazardous exposure. The claim must be filed within one year therefrom. Parker v. Blackwell Zinc Co., Okl., 325 P.2d 958; Pittsburg Plate Glass Company v. Branstetter, Okl., 341 P.2d 562.

The present claim was instituted on December 9, 1958, and the last hazardous exposure was fixed at February 16, 1958. Although the record shows that from March, 1957 to February 16, 1958, claimant was working at the bathhouse, the tenor of the evidence indicates that the air in that area, while "cleaner", was not free from the noxious dusts and was occasionally filled with smoke. Claimant testified that he was harmfully affected after his transfer to the bathhouse and the evidence shows that the bathhouse was, at all times, infiltrated by noxious dust. Medical testimony of Dr. B. supports the fact that noxious dust, however slight its toxic level may be, was harmful to claimant's condition.

The question of what constitutes a "hazardous exposure" is one of fact. It must be determined on the basis of the harmful effect produced upon an individual rather than by the quantity of toxic substances present. Orosco v. Poarch, 70 Ariz. 432, 222 P.2d 805; Uta-Carbon Coal Co. v. Industrial Commission, 104 Utah 567, 140 P.2d 649; Utah Const. Co. v. Berg, 68 Ariz. 285, 205 P.2d 367; Colorado Fuel & Iron Corp. v. Alitto, 130 Colo. 130, 273 P.2d 725. What may be harmful to one person is not necessarily pathogenic to another. We find the evidence sufficient to show that during the year preceding the filing of his claim, claimant was harmfully affected by exposure to smoke and dust while working at the bathhouse.

When the issue of whether a claim is barred by the statute of limitation depends upon a question of fact, and the trial tribunal has heard evidence thereon, its finding on such issue will not be disturbed on review when based on competent proof reasonably tending to establish the factual determination made. Logan County v. York, Okl., 270 P.2d 968; Determan v. Wilson & Co., Okl., 304 P.2d 1060; Cupit v. Dancu Chemical Company, Okl., 316 P.2d 593.

Award sustained.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, JOHNSON, JACKSON and IRWIN, JJ. concur.