**FRIENDLY CHEVROLET COMPANY,**
Petitioner,

v.

**Dallas H. POINTER and the State
Industrial Court, Respondents.**

No. 41988.

Supreme Court of Oklahoma.

Sept. 26, 1967.

Rehearing Denied Dec. 19, 1967.

Sandlin & Daugherty, Holdenville, Fenton, Fenton, Smith, Reneau & Moon, Marion Opala, Oklahoma City, Ben Owens, Miami, for petitioner.

E. W. Keller, Marx Childers, Oklahoma City, Charles R. Nesbitt, Atty. Gen., for respondents.

WILLIAMS, Justice.

There is involved here for review an award entered by the State Industrial Court allowing the respondent, claimant below, compensation for partial permanent disability under the provisions of the Occupational Disease Amendment to the Workmen's Compensation Act, 85 O.S.1961, § 3(7) and (16). Parties will be referred to as they appeared before the State Industrial Court.

Claimant, aged 60, was employed by respondent as an automobile body worker and painter from December 22, 1962 until October 21, 1964. He contends that during the period of his employment he was exposed to the inhalation of toxic fumes which has resulted in his complete, total and permanent disability.

Respondent admits that claimant was employed at a hazardous employment covered by the Workmen's Compensation Act at a rate of pay entitling him to the maximum benefits provided for in the Act, if he establishes his claim to be compensable.

The trial judge awarded the claimant total and permanent disability. The State Industrial Court sitting en banc reduced the award to 60% permanent partial disability to the body as a whole.

Respondent's sole contention on appeal is that the evidence fails to establish that claimant's disability, if any, was caused by breathing toxic fumes while employed by it within the provisions of the statute to which reference hereinabove has been made.

A summary of the evidence follows. Claimant is an automobile painter and body worker and had been working at that type of work for approximately 15 years before he commenced working for the respondent in December, 1962. He had a noticeable cough at the time he commenced working for respondent.

Respondent's automobile business is located in a building in the City of Holdenville, approximately 60 feet wide by 150 feet long. The front 40 feet is used for offices and salesroom. The middle portion, being a separate automobile repair room, is approximately 60 by 70 feet. The repair room has several large windows and a wide door. There are two small vents in the top of the ceiling of the repair shop. The rear portion of the building is used for painting and body work. This room is approximately 60 by 40 feet. The paint shop is partitioned off from the repair room with the exception of a sliding door approximately 12 feet wide. There is a window in the paint room and also an ordinary-size door, both from the outside of the building.

There is a small portable electric fan in the paint shop used for blowing paint fumes out the window or away from the car being painted. The building is not equipped with mechanical suction fans for use in exhausting the fumes to the outside of the building from the paint room or the repair shop. The sliding door between the repair shop and paint room on some occasions was open while cars were being painted.

There is evidence of effect that somewhat dense clouds of smoke sometimes accumulated in the repair shop from the exhausts of cars being repaired or driven into or from the repair shop. Some of these exhaust fumes would get into the paint room.

Claimant painted automobiles in the paint room using a spray gun.

Claimant testified that other paint shops where he had worked were equipped with exhaust fans and water screens.

During a portion of the time he was employed by the respondent the claimant operated an auto repair and paint shop in the garage of his home where he painted and repaired automobiles at night after having completed his days work for respondent.

Claimant testified that he quit work because Dr. J, his own doctor, advised him to quit. He experienced spells of coughing and shortness of breath during the year 1964. He was admitted to the hospital on the recommendation of Dr. J on October 27, 1964. At the hearing he testified that he has trouble breathing and cannot sleep except sitting up; that if he lies down he has pain and pressure on his body; and that he cannot walk with speed any great distance and is unable to work.

Claimant submitted in evidence the written report of Dr. J who is his family physician and has been treating him for many years. Claimant visited Dr. J in July, 1959, complaining of "flu", a fever, coughing, weakness and shortness of breath. Dr. J made "a tentative diagnosis of emphysema with probably atelectasis and bronchiectasis * * * probably due to the fact that he was a spray painter by occupation" and stated that working "under this atmosphere of fog and spray" "was not helping his lungs very much."

Dr. J treated the claimant again in September and December, 1963, upon complaints of fever, coughing, severe weakness and shortness of breath. Claimant's temperature was 103.5 degrees. He treated the claimant again for the same symptoms on September 28, 1964. As above set forth, claimant was admitted to the hospital on October 27, 1964. Dr. J made "a diagnosis of pneumonia, a high fever, and the same complaints as before." His final "diagnosis was pneumonitis, bilaterally acute, with secondary diagnosis of emphysema, mild, chronic."

Dr. J testified of effect that he had concluded that the claimant had become physically unable to carry on gainful occupation; that in the witness' opinion claimant probably would never be able to return to work and continue at it; that he had developed symptoms indicating he might have heart failure due to his described condition; that claimant's "final breaking point was reached while he was working for" respondent.

Dr. P. testified for claimant that claimant had developed a chronic pulmonary condition and secondary heart strain; that he was totally and permanently disabled for his type of work or any work that required much exertion; that his disability apparently dated back to about 1957 but that most of it appeared to have developed during the two years he had been employed by respondent and that his work for respondent had aggravated a pre-existing condition.

Dr. M. testified for claimant that in his opinion claimant had chronic bronchitis and a pulmonary emphysema, secondary to the bronchitis; that he then had evidence of a heart strain, secondary to pulmonary disease; that claimant had a history of having worked for a period of time, inhaling fumes in an atmosphere where there was inadequate circulation of air; that it was the witness' opinion that claimant's condition of pulmonary emphysema had "been complicated, accelerated, and finally aggravated on a permanent basis, due to his occupation and work" for the respondent; that claimant, "as a result of this situation," had become a permanently and totally disabled person for the performance of ordinary labor.

Drs. D. and L. testified as expert witnesses for respondent of cumulative effect that claimant had a lesion in one lung with a small amount of calcium present; that some type of resin present in paint could have been responsible; that rest and treatment had resulted in his condition improving; that his maximum breathing capacity was well above normal; that his obstructive disease was likely related to his smoking; that the small (quarter-sized) area of gramulomatous pneumonitis was not disabling and would never be; that on examination there was no evidence of heart disease; that claimant had had an episode of illness lasting from September, 1964, to March, 1965, but had recovered from his acute illness; that claimant's activity might be limited to some extent but not to so great a degree as to prevent ordinary activ-

ities; that there is no significant heart disease; that claimant has no permanent disabling disease due to his occupational environment; and that his bronchitis and pulmonary emphysema are due to other etiological factors

■ The evidence is conflicting but is sufficient to establish that the claimant during the time he was employed by the respondent was required to work in an inadequately ventilated area where he was exposed to the breathing of paint fumes and carbon monoxide fumes emitted from the exhausts of motors of automobiles.

■ "Carbon Monoxide" is one of the "poisons" designated in the Oklahoma Occupational Disease Statute, 85 O.S.1961, § 3(16). We have held that disability resulting from exposure to one of the toxic substances designated in the Occupational Disease Statute is compensable although not caused solely by such exposure. National Zinc Company v. Hainline, Okl., 360 P.2d 236.

Respondent contends that the evidence fails to establish that the ingredients contained in the paint used are among those enumerated as poisonous in 85 O.S.1961, § 3(16). We believe this to be immaterial as one of the doctors testified that claimant's disability was caused by the breathing of carbon monoxide fumes with the breathing of paint fumes a contributing factor.

Respondent also contends that the evidence establishes that claimant's disability could have resulted from his breathing paint fumes while working in paint shops before being employed by respondent or from breathing toxic substances while painting automobiles in his own paint shop at his residence, or from natural causes. The finding of the trial court would appear to finally negate this argument.

■ This Court has held that the exposure under the Oklahoma Occupational Disease Statute need not be the sole cause of the disability. The claim is compensable if the exposure aggravates and accelerates a nonoccupational disease or if claimant's condition is caused partly from factors not related to the exposure.

In National Zinc Company v. Hainline, Okl., 360 P.2d 236, we said:

"* * * The Workmen's Compensation Act of this State makes no provision for such apportionment and does not undertake to measure the degree by which a non-occupational infirmity is hastened or augmented by compensable aggravation superimposed upon it. * * *"

In Malar v. Malar, Okl., 353 P.2d 17, we said:

"It is not necessary for the trial judge to separately trace and evaluate each cause which contributed to produce the ultimate disability. Nor need the disability be attributable to any appreciable part of the injury, standing alone. It is the aggravation of the disease by the injury which renders the entire disability resulting therefrom compensable. * *"

■ The evidence here, both lay and medical, although conflicting, is adequate and sufficient to sustain the award of the State Industrial Court allowing the claimant 60% permanent partial disability to the body as a whole. We are bound by the determinations of the State Industrial Court on questions of fact if reasonably supported by the evidence and have no authority to weigh conflicting evidence for the purpose of determining on which side the preponderance lies. Akin v. Akin Distributors, Inc., Okl., 386 P.2d 769; Hyde Construction Co. v. Sparks, Okl., 385 P.2d 495.

Award sustained.

JACKSON, C. J., and BLACKBIRD, BERRY, HODGES and LAVENDER, JJ., concur.