AYISI v. SEQUEL YOUTH & FAMILY SERVICES, LLC



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:AYISI v. SEQUEL YOUTH & FAMILY SERVICES, LLC

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 AYISI v. SEQUEL YOUTH & FAMILY SERVICES, LLC
2019 OK CIV APP 21
Case Number: 117348
Decided: 02/28/2019
Mandate Issued: 03/27/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 21, __ P.3d __

 

MARCELLA AYISI, Petitioner,
v.
SEQUEL YOUTH & FAMILY SERVICES, LLC, TRAVELERS INDEMNITY CO., and THE WORKERS' COMPENSATION COMMISSION, Respondents.

PROCEEDING TO REVIEW AN ORDER OF
THE WORKERS' COMPENSATION COMMISSION

HONORABLE MICHAEL T. EGAN, ADMINISTRATIVE LAW JUDGE

SUSTAINED IN PART, VACATED IN PART, AND REMANDED FOR
FURTHER PROCEEDINGS

Bob Burke, Oklahoma City, Oklahoma and Jeffrey M. Cooper, Oklahoma City, Oklahoma, for Petitioner

Mia C. Rops, AYIK & ASSOCIATES, St. Paul, Minnesota, for Respondents

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 This is the second appeal in this case. The first appeal -- Sequel Youth & Family Services LLC v. Ayisi, 2018 OK CIV APP 7, 412 P.3d 107 -- arose from an order of the Workers' Compensation Commission affirming the order of an Administrative Law Judge (ALJ) who found Marcella Ayisi (Claimant) sustained compensable injuries to both of her knees arising out of the course and scope of her employment. As explained at greater length in the prior appeal, Claimant fell on August 26, 2015, while working as a residential counselor for Sequel Youth & Family Services, LLC. She "land[ed] directly on both knees." 2018 OK CIV APP 7, ¶ 2. The medical evidence generated after the accident revealed that the primary injury or condition in Claimant's knees is osteoarthritis.

¶2 As explained in the prior appeal, the pertinent statutory provisions are found in 85A O.S. Supp. 2014 § 2, and provide as follows:

9. a. "Compensable injury" means damage or harm to the physical structure of the body . . . caused solely as the result of either an accident, cumulative trauma or occupational disease arising out of the course and scope of employment. . . .

. . . .

b. "Compensable injury" does not include:

. . .

(5) any strain, degeneration, damage or harm to, or disease or condition of, the eye or musculoskeletal structure or other body part resulting from the natural results of aging, osteoarthritis, arthritis, or degenerative process including, but not limited to, degenerative joint disease, degenerative disc disease, degenerative spondylosis/spondylolisthesis and spinal stenosis, or

(6) any preexisting condition except when the treating physician clearly confirms an identifiable and significant aggravation incurred in the course and scope of employment.

¶3 Regarding the exclusion of conditions "resulting from the natural results of aging, osteoarthritis, arthritis, or degenerative process," set forth in § 2(9)(b)(5), we explained that under both the Workers' Compensation Code and the Workers' Compensation Act such conditions were also excluded except where "the employment is a major cause of the deterioration or degeneration and is supported by objective medical evidence[.]" Ayisi, ¶ 14 (citing 85 O.S. Supp. 2010 § 3(13)(d); 85 O.S. 2011 § 308(10)(c)). We explained, among other things, that "legislative silence is rarely to be taken as clear legislative intent to abrogate an established construction," Ayisi, ¶ 14, and we explained that an alternative construction requiring that such injuries, in effect, be "caused solely" by the employment in order to be compensable would "be untenable in light of the statute as a whole," id. ¶ 21. We concluded, in pertinent part, that Claimant's osteoarthritis -- which we explained was defined as a condition caused by the damage or breakdown of the protective joint cartilage between bones -- is therefore compensable under § 2(9)(b)(5) if her employment is found to be the major cause of her osteoarthritis. Ayisi, ¶ 14 n.2. We stated in the prior appeal that "it is the legislative intent that, in this case, Claimant's osteoarthritis, if resulting from the natural results of aging, is not compensable unless it is found that the employment is the major cause of the deterioration or degeneration and such a finding is supported by objective medical evidence." Id. ¶ 27. We stated that this test "applies to both of Claimant's knees." Id. Following the issuance of the first appeal, neither party filed a petition for rehearing or a petition for certiorari. Mandate issued.

¶4 On remand, the ALJ determined Claimant's employment was not the major cause of her osteoarthritis in her knees and, therefore, denied compensation. Claimant sought review by the Commission which affirmed the ALJ's order. The issue arose whether Claimant should at least be found to have sustained a compensable injury to her right knee as a result of an aggravation of a preexisting condition under § 2(9)(b)(6). As articulated by the Commission, however, this Court, in the prior appeal, "expressly held that Claimant's osteoarthritis is compensable only if her employment is the major cause of the degeneration in her knees. Because Claimant failed to seek relief from that decision, [that] determination is now the settled law of the case and cannot be relitigated."[1]

¶5 We take this opportunity to clarify that § 2(9)(b)(6) is applicable to cases involving preexisting conditions where "the treating physician clearly confirms an identifiable and significant aggravation [of that preexisting condition] incurred in the course and scope of employment."[2] Any implication to the contrary in the prior appeal regarding the effect of § 2(9)(b)(6) is in error.

¶6 With regard to Claimant's left knee, however, we explained in the prior appeal that the ALJ concluded there was no "preexisting condition as defined in the AWCA[.]" Ayisi, ¶ 15.[3] Thus, we concluded, at least impliedly, that the lower court erred in awarding compensation for the left knee under § 2(9)(b)(6). We further concluded that Claimant could still receive compensation for her left knee under § 2(9)(b)(5) if the major cause of her osteoarthritic condition in her left knee was her employment. Because the trial court's determination on remand that the major cause of Claimant's osteoarthritis is not work-related is supported by substantial evidence, we conclude compensation for Claimant's left knee was appropriately denied on remand. See Gillispie v. Estes Exp. Lines, Inc., 2015 OK CIV APP 93, ¶ 15, 361 P.3d 543 (On fact questions, this Court will review the record to determine if there is substantial evidence to support the decision.).

¶7 The trial court also determined on remand that the major cause of Claimant's condition in her right knee is not work-related, and this determination is also supported by substantial evidence. However, the ALJ previously determined that, regarding the right knee, Claimant suffered an aggravation of a preexisting condition. The finding that there was a preexisting condition in Claimant's right knee at the time of the accident is based on the fact that Claimant had an anthroscopic procedure performed on her right knee approximately sixteen years before the accident. Regardless of the distance in time between the accident and this procedure, however, the findings that Claimant had a "preexisting condition" in her right knee at the time of the accident, and that this is the condition for which treatment was provided, are supported by substantial evidence.[4] Moreover, it is undisputed the treating physician confirmed an identifiable and significant aggravation occurred to that condition in the course and scope of Claimant's employment. Consequently, regarding Claimant's right knee, the ALJ appropriately found that, under § 2(9)(b)(6), Claimant sustained a compensable injury.[5] To the extent the prior appeal is at odds with this analysis, that portion of the prior appeal is overruled. Although Claimant failed to file a petition for rehearing or a petition for certiorari following this Court's issuance of the prior appeal, we conclude that a failure to reverse course would "result in a gross or manifest injustice." Acott, 2011 OK 56, ¶ 11.[6]

¶8 For these reasons, we sustain that portion of the Commission's order finding Claimant did not suffer a compensable left knee injury, but we vacate that portion of the Commission's order finding Claimant did not sustain a compensable injury to her right knee. We remand this case to the ALJ for further proceedings consistent with this Opinion.[7]

¶9 SUSTAINED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

WISEMAN, V.C.J., and THORNBRUGH, J. (sitting by designation), concur.

FOOTNOTES

[1] The Oklahoma Supreme Court has explained:

The doctrine of the settled law of the case . . . provides that issues which are litigated and settled on appeal, or which could have been settled in that appeal, may not be the subject of further litigation between the parties in that case and are deemed settled. It is a rule of judicial economy designed to prevent an appellate court from twice having to deal with the same issue.

Acott v. Newton & O'Connor, 2011 OK 56, ¶ 10, 260 P.3d 1271 (internal quotation marks omitted) (citations omitted). The Acott Court explained there is an

exception to the rule when the prior decision is palpably erroneous and . . . failure to reverse it will result in a gross or manifest injustice. . . . Thus, under the settled law of the case doctrine, an issue may not be asserted on remand, or in a second or subsequent appeal, if the issue (1) was addressed in the first appeal, (2) could have been raised in the first appeal, or (3) the issue asserted was determined by implication in the first appeal.

Id. ¶ 11 (internal quotation marks omitted) (citations omitted).

[2] As quoted above, § 2(9)(b)(6) provides that the term "compensable injury" does not include "any preexisting condition except when the treating physician clearly confirms an identifiable and significant aggravation incurred in the course and scope of employment." (Emphasis added.) See also Stiles v. Okla. Tax Comm'n, 1987 OK 85, ¶ 13, 752 P.2d 800 ("In Oklahoma[,] disability resulting from the aggravation of a pre-existing disease or condition is compensable." (footnote omitted)); ITT Continental Baking Co. v. Ware, 1980 OK 167, ¶ 8, 620 P.2d 1308 ("[I]t has long been recognized in this jurisdiction that aggravation of a pre-existing condition or disease is compensable." (footnote omitted)). See generally Okla. City v. Schoonover, 1975 OK 52, 535 P.2d 688; Marlar v. Marlar, 1960 OK 110, 353 P.2d 17.

[3] We also explained in the prior appeal that "the term 'preexisting condition' has a limited definition in the AWCA -- it 'means any illness, injury, disease, or other physical or mental condition, whether or not work-related, for which medical advice, diagnosis, care or treatment was recommended or received preceding the date of injury[.]' 85A O.S. Supp. 2014 § 2(36)." Ayisi, ¶ 15.

[4] We explained in the prior appeal:

Claimant testified she was not having any problems with her knees prior to the accident, though she testified she had knee surgery performed on her right knee -- a "right knee arthroscopic procedure" -- in the year 2000. Claimant testified she was released "full duty" soon after that surgery, and she testified she had been working for sixteen years prior to the fall and had never been placed on any form of restrictions for her right knee.

Ayisi, ¶ 3. The past treatment to Claimant's right knee satisfies the limited definition of preexisting condition if the condition which she claims was aggravated by the accident was in fact the "condition . . . for which" the right knee arthroscopic procedure in 2000 was performed -- i.e., the "condition . . . for which medical advice, diagnosis, care or treatment was recommended or received preceding the date of injury[.]" 85A O.S. § 2(36). The record indicates the past procedure was actually a right knee "meniscus repair," and the January 2016 medical report of Kevin W. Hargrove, M.D., states that Claimant "is likely now having some potential loose fragment that has developed, or possibly a recurrent or progressive lateral meniscus tear. However, her primary and obvious problem is osteoarthritis." This would appear to suggest that the surgery may have been for a condition distinguishable from the osteoarthritic condition present at the time of the accident, as does the following language found in the medical report of Lance E. Rosson, D.O., in which Dr. Rosson states he "suspect[s] that [Claimant] has MRI-documented meniscal tears and/or chondral injury and/or loose bodies along with aggravation of" the osteoarthritis in her right knee. (Emphasis added.) However, in the "Oklahoma Diagnostic Imaging" report regarding the MRI on Claimant's right knee, it is stated that "[t]here is degenerative blunting along the inner margin of the medial meniscus but otherwise no acute medial meniscus tear. There is complex degeneration and tearing throughout the lateral meniscus with peripheral extrusion of the meniscus body. . . ." This evidence supports the inference, which the ALJ endorsed, that the meniscus repair procedure was related to a long-term osteoarthritic condition in the right knee rather than an unrelated injury. See also Angela Lange et al., Degenerative meniscus tears and mobility impairment in women with knee osteoarthritis, 15 Osteoarthritis and Cartilage 701, 701 (2007), www.sciencedirect.com/science/article/ pii/S1063458406003232 ("Meniscus tears are often presumed to be associated with a traumatic event, but they can also occur as a result of the cartilage degeneration process in osteoarthritis (OA) of the knee."); Carol Eustice & Grant Hughes, Meniscal Tears and Osteoarthritis (2018), https://www.verywellhealth.com/meniscal-tears-and-osteoarthritis-2552038 ("[A] meniscal tear can lead to knee osteoarthritis," and it is also true that "knee osteoarthritis can lead to a spontaneous meniscal tear through breakdown and weakening (degeneration) of the meniscus. A degenerative meniscal lesion observed on MRI is suggestive of early osteoarthritis.").

[5] Although the record indicates the osteoarthritis "with valgus deformities" is present in both of Claimant's knees, and our analysis leads to the conclusion that Claimant sustained a compensable injury only to her right knee, we note that the medical evidence also indicates the "right knee [is] much more advanced than [the] left," and Claimant reported in September 2015, for example, that her "left knee is significantly better" and she "is having no pain in that knee, but the right knee is still tender" with "increasing pain in the right knee . . . ."

[6] We note that our determination in this appeal does not substantially thwart the interest of judicial economy which underpins the doctrine of settled law of the case. In this regard, the majority of this Court's analysis in Ayisi, 2018 OK CIV APP 7-- in particular, our analysis of § 2(9)(b)(5) -- remains unaffected by this decision, the remand of this case in the prior appeal was appropriate, and our resolution of this appeal requires no further adjudication of the underlying issues.

[7] Claimant has raised additional arguments on appeal. However, those arguments are either rendered moot by our resolution of this appeal, or constitute arguments which either were raised and rejected, at least impliedly, in the prior appeal, or which could have been, but were not, raised in the prior appeal. Acott, ¶¶ 10-11. For these reasons, we will not address Claimant's additional arguments in this second appeal.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2015 OK CIV APP 93, 361 P.3d 543, GILLISPIE v. ESTES EXPRESS LINES, INC.
Discussed
 2018 OK CIV APP 7, 412 P.3d 107, SEQUEL YOUTH & FAMILY SERVICES LLC v. AYISI
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 85, 752 P.2d 800, 58 OBJ 2666, Stiles v. Oklahoma Tax Com'n
Discussed
 1960 OK 110, 353 P.2d 17, MARLAR v. MARLAR
Discussed
 2011 OK 56, 260 P.3d 1271, ACOTT v. NEWTON & O'CONNOR
Discussed at Length
 1975 OK 52, 535 P.2d 688, OKLAHOMA CITY v. SCHOONOVER
Discussed
 1980 OK 167, 620 P.2d 1308, ITT Continental Baking Co. v. Ware
Discussed
Title 85. Workers' Compensation
 Cite
Name
Level

 85 O.S. 308, Repealed
Cited
 85 O.S. 3, Repealed
Cited
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 2, Definitions
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA